Filed 1/10/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IZICK DAVID GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. B269836<br>(Super. Ct. No. SB210974)<br>(Santa Barbara County)<br><br>ORDER DENYING PETITION<br>FOR REHEARING AND<br>MODIFYING OPINION<br>(No Change in Judgment) |

THE COURT:

Respondent's petition for rehearing is denied. It is ordered that the opinion filed herein on December 17, 2018, be modified as follows:

1. On page 6, add the following footnote (footnote 3) at the end of the first full paragraph: "We decline to consider the arguments regarding this concession raised for the first time in respondent's petition for rehearing. (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1013.)"

2. On page 8, footnote 3 should be footnote 4.

3. On page 17, footnote 4 should be footnote 5.

No change in judgment.

Filed 12/20/18 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IZICK DAVID GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. B269836<br>(Super. Ct. No. SB210974)<br>(Santa Barbara County)<br><br>ORDER MODIFYING<br>OPINION<br>(No Change in Judgment) |

THE COURT:

On the court's own motion, it is ordered that the opinion filed herein on December 17, 2018, be modified as follows:

On page 3, delete the date "1996" in the second sentence of the second full paragraph and replace it with "1995," so that the sentence reads:  "Briefly, on January 8 or 9, 1995, appellant, who was 17 years old, approached Jill N., threw her to the ground and choked her."

No change in judgment.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IZICK DAVID GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. B269836<br>(Super. Ct. No. SB210974)<br>(Santa Barbara County) |

In 1996, appellant Izick David Garcia was convicted of multiple violent sex offenses and sentenced to a prison term of 94 years to life. Appellant was 17 at the time he committed the crimes. We affirmed the judgment. (*People v. Garcia* (July 29, 1997, B104833) [nonpub. opn.] (*Garcia I*).)

In 2012, appellant filed a petition for writ of habeas corpus challenging the constitutionality of his sentence. He claimed he was entitled to resentencing under a new line of cases holding that a juvenile's sentence for a nonhomicide offense violates the Eighth Amendment's prohibition against cruel and unusual punishment if it amounts to a de facto life without the possibility of parole (LWOP) sentence. (See *Miller v. Alabama* (2012) 567

U.S. 460 [183 L.Ed.2d 407] (*Miller*); *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (*Graham*); *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*).) The trial court granted appellant's petition and resentenced him to 50 years to life in state prison. It determined the revised sentence is constitutional in that it affords appellant a meaningful opportunity for a parole hearing within his natural life expectancy. (See *Caballero*, at pp. 268-269.)

Appellant contends, and the Attorney General concedes, that Proposition 57 requires that we vacate the sentence, conditionally reverse the convictions, and remand to the trial court with directions to refer the case to the juvenile court for a transfer hearing to determine the propriety of prosecution of the case in adult criminal court. (See Welf. & Inst. Code, § 707, subd. (a); *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 310 (*Lara*).)

If the juvenile court determines it would not have transferred appellant to criminal court under current law, the juvenile court shall treat appellant's convictions as juvenile adjudications and impose an appropriate disposition. (*Lara, supra*, 4 Cal.5th at p. 310.)

If the juvenile court decides it would have transferred appellant to criminal court, the case shall be transferred to criminal court, which shall reinstate appellant's convictions but conduct a resentencing hearing in accordance with *People v. Contreras* (2018) 4 Cal.5th 349, 383 (*Contreras*). The Supreme Court in that case held that a sentence of 50 years to life constitutes a de facto LWOP sentence in violation of the Eighth Amendment. (*Id.* at p. 379.)

2

Finally, appellant argues that Penal Code section 3051[1] violates the equal protection clause and the Eighth Amendment because it excludes him and other juveniles sentenced under the One Strike law from a youth offender parole hearing after 25 years in prison. *Contreras* considered this argument but declined to decide the issue, stating "[i]t suffices to note . . . that the current penal scheme for juveniles may warrant additional legislative action." (*Contreras*, *supra*, 4 Cal.5th at p. 382.) Because the matter must be remanded to the trial court for further proceedings, we conclude the issue is not ripe for review.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of the underlying crimes are minimally relevant to the issues raised on appeal. Briefly, on January 8 or 9, 1996, appellant, who was 17 years old, approached Jill N., threw her to the ground and choked her. Appellant forced Jill N. at knifepoint to orally copulate him. He also raped her. Appellant choked her into unconsciousness and when she awoke, appellant was gone, along with her belongings. (*Garcia I*, *supra*, B104833.)

On January 28, 1995, appellant raped Jane Doe in her hotel room. Appellant also hit her in the face and kicked her in the stomach and chest area. She suffered a fractured eye socket, ruptured eardrum, massive bruising and loosened teeth. After appellant left, she discovered that her wallet and other property were missing. (*Garcia I*, *supra*, B104833.)

On February 6, 1995, appellant attacked Hulda I. as she was walking on the beach. He grabbed her by the neck, put a gun to her side and said he would kill her if she called out.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

3

Appellant then choked her and hit her repeatedly in the face. After a passerby responded to her screams, appellant ran away. (*Garcia I*, *supra*, B104833.)

A jury convicted appellant of crimes against the three victims, including forcible oral copulation (count 1; § 288a, subd. c)), forcible rape (counts 2 & 7; § 261, subd. (a)(2)), assault by means of force likely to produce great bodily injury (counts 3 & 10; § 245, subd. (a)(1)), robbery (counts 4 & 8, § 211), kidnapping for sexual purposes (counts 5 & 12; §§ 207, subd. (a), former 208, subd. (d)), forcible penetration by a foreign object (count 6; § 289, subd. (a)), first degree burglary (count 9; § 459), and assault with intent to commit rape (count 11; § 220). The jury also found true allegations that appellant personally used a deadly weapon and inflicted great bodily injury on Jill N. (§§ 12022, subd. (b), 12022.3, 12022.7, 12022.8), and that he inflicted great bodily injury on Jane Doe (§§ 12022.7, 12022.8). Further, the jury found true the allegation that the crime of forcible penetration by a foreign objection (§ 289, subd. (a)) against Jane Doe occurred during the commission of a burglary pursuant to section 667.61, subdivisions (a) and (d). The jury also found true the allegation that appellant personally used a firearm during the commission of the offenses against Hulda I. (§ 12022.5, subd. (a).) Appellant was sentenced to an aggregate term of 94 years to life in prison. (*Garcia I*, *supra*, B104833.)

*Miller*, *Graham* and *Caballero* were decided years after appellant was sentenced. Based on these authorities, appellant filed a habeas petition challenging the legality of his sentence. The trial court issued an order to show cause, observing that since appellant "can only earn credit at the rate of 15%, he will be approximately 97 years old when he is first eligible for parole.

4

[Appellant] turned 30 in 2007. At that time, a 30 year old African-American male was expected to live to the age of 72.7 years. [Citation.] Therefore, [appellant's] parole eligibility date . . . falls outside his natural life expectancy."

At the show cause hearing, the prosecution requested a sentence that would render appellant eligible for a parole hearing date when he is approximately 77 years old. Defense counsel asked for a determinate sentence of 45 years, emphasizing certain mitigating factors, including appellant's childhood history of foster care and impoverishment and the improvements in his attitude and behavior in prison. Appellant testified on his own behalf.

Noting that *Miller*, *Graham* and *Caballero* require that juvenile offenders be given "a meaningful opportunity to rehabilitate and to demonstrate that [they] should be paroled within their natural life expectancy," the court imposed a sentence of 50 years to life. The sentence was comprised of two terms of 25 years to life, for counts 2 and 7, pursuant to section 667.61, known as the One Strike law.[2] The court found that this sentence would give appellant "an opportunity to prove that [he's] capable of living on the outside at the age of 59. That's my calculation. Maybe it's 60, maybe it's 58, but somewhere in that ballpark. So, that's not young, but it's not 77 either."

DISCUSSION

---

[2] The trial court dismissed the enhancements as to counts 2, 6 and 7 pursuant to section 1385 and stayed sentences as to counts 3 through 5, and 8 through 11, pursuant to section 654. The sentences in counts 6 and 12 were imposed concurrently to the sentences in counts 2 and 7.

*Appellant is Entitled to a Juvenile Court Transfer Hearing*

In supplemental briefing, appellant contends that, due to the passage of Proposition 57, he is entitled to a hearing in juvenile court regarding whether his case should be transferred to adult criminal court.  Appellant requests that the judgment be conditionally reversed, so that the hearing may take place.  The Attorney General concedes appellant is entitled to a transfer hearing.

Appellant was charged with the offenses in 1995.  Under the law at the time, appellant's case had to be brought in juvenile court.  (See former Welf. and Inst. Code section 707; *Juan G. v. Superior Court* (2012) 209 Cal.App.4th 1480, 1489 & fn. 4.)  In order to try appellant as an adult, the district attorney had to file a motion pursuant to former Welfare and Institutions Code section 707, subdivision (c) for a judicial determination that appellant was not fit to be dealt with under juvenile court law.  For purposes of the motion, appellant was "presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless the juvenile court concludes, based upon evidence, . . . that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court," based on five criteria:  "(1) The degree of criminal sophistication exhibited by the minor.  [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.  [¶] (3) The minor's previous delinquent history.  [¶] (4) Success of previous attempts by the juvenile court to rehabilitate the minor.  [¶] (5) The circumstances and gravity of the offenses alleged in the petition to have been committed by the minor."  (*Ibid.*)  In order to make a finding of fitness, the juvenile court had to find "the minor [was] fit and proper under each and

6

every one of the above criteria." (*Ibid.*) It is apparent that appellant was found to be unfit under these criteria.

"Amendments to former [Welfare and Institutions Code] sections 602 and 707 in 1999 and 2000, some by initiative [Proposition 21], changed this historical rule. Under the changes, in specified circumstances, prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as an adult. [Citations.] . . . [¶] Proposition 57 changed the procedure again, and largely returned California to the historical rule. 'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated. [Citation.]' [Citations.]" (*Lara, supra*, 4 Cal.5th at pp. 305-306.)

Proposition 57 requires, therefore, that prosecutors commence the action against a minor in juvenile court. "If the prosecution wishes to try the juvenile as an adult, the juvenile court must conduct what [is called] a 'transfer hearing' to determine whether the matter should remain in juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult. (See Welf. & Inst. Code, § 707, subd. (a).)" (*Lara, supra*, 4 Cal.5th at p. 303, fn. omitted.)

Our Supreme Court has held that Proposition 57 applies retroactively to cases that are not yet final on appeal. (*Lara*,

7

*supra*, 4 Cal.5th at pp. 303, 314.)  Here, the parties concede appellant's case is not yet final on appeal.  (See *ibid*.)

In *Lara*, the court approved the remedy set forth in *People v. Vela* (2017) 11 Cal.App.5th 68 (*Vela*),[3] for juveniles that had cases pending in criminal court prior to the passage of Proposition 57.  (*Lara, supra*, 4 Cal.5th at pp. 309-313.)  "Specifically, the *Vela* court ordered as follows:  'Here, under these circumstances, [the defendant]'s conviction and sentence are conditionally reversed and we order the juvenile court to conduct a juvenile transfer hearing.  ([Welf. & Inst. Code,] § 707.)  When conducting the transfer hearing, the juvenile court shall, to the extent possible, treat the matter as though the prosecutor had originally filed a juvenile petition in juvenile court and had then moved to transfer [the defendant]'s cause to a court of criminal jurisdiction.  ([Welf. & Inst. Code,] § 707, subd. (a)(1).)  If, after conducting the juvenile transfer hearing, the court determines that it would have transferred [the defendant] to a court of criminal jurisdiction because he is "not a fit and proper subject to be dealt with under the juvenile court law," then [the defendant]'s convictions and sentence are to be reinstated.  ([Welf. & Inst. Code,] § 707.1, subd. (a).)  On the other hand, if the juvenile court finds that it would not have transferred [the defendant] to a court of criminal jurisdiction, then it shall treat [the defendant]'s convictions as juvenile adjudications and impose

---

[3] *Lara* cited the original decision issued in *Vela*, then on review in the Supreme Court.  (See *Lara, supra,* 4 Cal.5th at pp. 306, 310.)  The Supreme Court subsequently vacated the original opinion filed in *Vela* and the Court of Appeal refiled a substantially similar decision in *People v. Vela* (2018) 21 Cal.App.5th 1099.

an appropriate "disposition" within its discretion.' (*Vela, supra,* 11 Cal.App.5th at p. 82.)" (*Lara*, at p. 310, italics omitted.)

Although the defendant in *Lara* was charged directly in adult criminal court, the court's reasoning applies equally to appellant, who received a fitness hearing under standards different than those currently in effect. In other words, the fact that appellant received a fitness hearing before his case was transferred to adult court does not preclude him from receiving a new transfer hearing in accordance with *Lara* and *Vela.*

Specifically, there are key differences between a Proposition 57 transfer hearing and the analogous fitness hearing under prior law. Most notably, Proposition 57 shifts the burden of proof in the hearing. Under prior law, the juvenile court was bound by a rebuttable presumption that the defendant was not fit for the juvenile court system, whereas under current law there is no such presumption. (Welf. & Inst. Code, § 707, subd. (a).) In addition, the court at appellant's fitness hearing could not retain jurisdiction unless it found him fit for juvenile court under all five criteria. (Former Welf. & Inst. Code, § 707, subd. (c).) In a transfer hearing under current law, the court must consider all five factors, but has broad discretion in how to weigh them. (Welf. & Inst. Code, § 707, subd. (a)(2).)

In conformance with the Supreme Court's directive in *Lara,* we conclude appellant is entitled to a transfer hearing in juvenile court. We therefore conditionally reverse the judgment to allow for such a hearing.

### *If the Case is Transferred to Adult Criminal Court, Appellant Must be Resentenced*

In *Graham, supra,* 560 U.S. at pages 81-82, the United States Supreme Court held that LWOP sentences for minors

9

convicted of nonhomicide offenses are unconstitutional. Two years later, *Miller*, *supra*, 567 U.S. at page 479, determined that sentencing schemes that make LWOP sentences mandatory for juveniles who commit homicide offenses constitute cruel and unusual punishment in violation of the Eighth Amendment.

In *Caballero*, *supra*, 55 Cal.4th at page 268, our Supreme Court applied *Graham* to nonhomicide juvenile offenders who receive a sentence that is so long it amounts to a de facto LWOP sentence. The court held that the sentence must provide a "meaningful opportunity [for the juvenile offender] to demonstrate [his or her] rehabilitation and fitness to reenter society in the future" and must take into consideration all mitigating circumstances, including the juvenile's age, role in the crime, and physical and mental development. (*Id.* at pp. 268-269.)

In response to *Caballero*, the Legislature enacted section 3051, which sets mandatory parole eligibility dates for most persons convicted of crimes before they turned 25. Relevant here is section 3051, subdivision (b)(3), which provides for a parole eligibility hearing in the 25th year of incarceration if the sentence is a term of 25 years to life. This provision, however, does not apply to Three Strikes sentences and One Strike sentences for certain felony sex offenses (§ 667.61). (§ 3051, subd. (h).) The Legislature determined that juveniles convicted of certain serious sex crimes under aggravated circumstances may be kept in prison more than 25 years before being given an opportunity for parole. Appellant's sentence includes two terms of 25 years to life because, among other things, he committed a burglary in order to carry out a rape, thus falling within the One Strike sentencing scheme. (§ 667.61, subds. (a), (d).)

10

Consequently, appellant is not subject to section 3051's mandatory minimum parole eligibility requirements. (See *Contreras*, *supra*, 4 Cal.5th at pp. 381-382.)

Appellant contends his sentence of 50 years to life does not pass constitutional muster, and that the matter must be remanded for resentencing, assuming his case does not remain in juvenile court. We agree.

In *Contreras*, two 16-year-old juveniles kidnapped two victims and committed multiple acts of rape, sodomy and other sex offenses against them. (*Contreras*, *supra*, 4 Cal.5th at pp. 356-357.) The trial court sentenced the defendants to prison terms of 50 and 58 years to life. (*Id.* at p. 358.) The Court of Appeal affirmed the convictions, but reversed the sentences because they precluded any possibility of parole until near the end of the defendants' lifetimes. (*Ibid.*) The Supreme Court granted review and, in a 4-3 decision, affirmed the judgment of the Court of Appeal, holding that the sentences violated the Eighth Amendment as interpreted in *Graham*, *supra*, 560 U.S. at page 75. (*Contreras*, at pp. 379, 383.)

The Supreme Court declined to decide whether parole eligibility at age 60 under the Elderly Parole Program or the defendants' ability to earn custody credits to reduce their parole eligibility dates would satisfy the Eighth Amendment. (*Contreras*, *supra*, 4 Cal.5th at p. 378-379.) The court concluded it was for the lower courts to address these issues in the first instance. (*Ibid.*) It further declined to provide guidance "on what length of sentence below 50 years will satisfy *Graham*." (*Id.* at p. 381.)

The Supreme Court ordered the matter remanded to the trial court for resentencing, directing that the court "consider, in

11

light of [the] opinion [in *Contreras*], any mitigating circumstances of defendants' crimes and lives, and the impact of any new legislation and regulations on appropriate sentencing." (*Contreras*, *supra*, 4 Cal.5th at p. 383.) The court further directed the sentencing court "to impose a time by which defendants may seek parole, consistent with [the *Contreras*] opinion." (*Ibid.*)

After *Contreras* was issued, we asked the parties to submit supplemental briefing regarding its effect on this appeal. The parties agree that *Contreras* controls and that the matter must be remanded to the trial court for resentencing, assuming the case is transferred to adult criminal court following the transfer hearing. If the case is not transferred, appellant's convictions will be treated as juvenile adjudications and the juvenile court will impose an appropriate disposition within its discretion. (*Lara*, *supra*, 4 Cal.5th at p. 310.)

*Appellant's Section 3051 Argument is*

*Not Ripe for Review*

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." A similar requirement appears in California Constitution, article 1, section 7. Appellant contends that section 3051 violates his equal protection rights because there can be no rational basis for treating him, as a One Strike sex offender, more severely than a juvenile who commits the more serious crime of murder with special circumstances. He claims it is irrational that someone with a first-degree murder conviction would be eligible for parole consideration after 25 years while appellant would not.

Although our Supreme Court has yet to decide this issue, it did discuss the issue at some length in *Contreras*. It "note[d] . . .

12

that the current treatment of juvenile One Strike offenders is anomalous given that juveniles convicted of special circumstance murder and sentenced to LWOP are now eligible for parole during their 25th year in prison.  This scheme appears at odds with the high court's observation that 'defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers. . . .  Although an offense like robbery or rape is "a serious crime deserving serious punishment," those crimes differ from homicide crimes in a moral sense.'" (*Contreras*, *supra*, 4 Cal.5th at p. 382, quoting *Graham*, *supra*, 560 U.S. at p. 69, citations omitted.)  *Contreras* further explained that "[i]n the death penalty context, the high court has said 'there is a distinction between intentional first-degree murder on the one hand and nonhomicide crimes against individual persons, even including child rape, on the other.  The latter crimes may be devastating in their harm, as here, but "in terms of moral depravity and of the injury to the person and to the public," they cannot be compared to murder in their "severity and irrevocability."'" (*Ibid.*, quoting *Kennedy v. Louisiana* (2008) 554 U.S. 407, 438, citation omitted.)

The Supreme Court also observed that it was not aware of any other provision in the Penal Code "that treats a nonhomicide offense more harshly than special circumstance murder. (Compare § 190.2 [prescribing penalty of death or LWOP for special circumstance murder] with § 667.61 [prescribing maximum penalty of 25 years to life or, when the victim is under age 14, LWOP for aggravated rape offenses].)" (*Contreras*, *supra*, 4 Cal.5th at p. 382.)  The court was unable to identify "any other jurisdiction that punishes juveniles for aggravated rape offenses

13

more severely than for the most aggravated forms of murder." (*Ibid.*) Indeed, it noted the anomaly "that if defendants had killed their victims after the sexual assaults and had been sentenced to LWOP, they would have been eligible for a youth offender parole hearing after 25 years of incarceration." (*Ibid.*)

Not only did *Contreras* conclude that the treatment of juvenile One Strike offenders appears to raise equal protection and Eighth Amendment issues, but it also noted "[t]here is also a colorable claim that [the treatment] constitutes 'unusual punishment' within the meaning of article I, section 17 of the California Constitution." (*Contreras*, *supra*, 4 Cal.5th at p. 382.) The court declined, however, to reach these issues, stating "[i]t suffices to note . . . that the current penal scheme for juveniles may warrant additional legislative action." (*Ibid.*)

In contrast, Justice Kriegler observed in his dissenting opinion that "[t]he Legislature has repeatedly determined that one strike juvenile offenders are not entitled to a youth offender parole hearing under section 3051. An early version of section 3051 did not exclude juvenile one strike offenders from a youth offender parole hearing (Legis. Counsel's Dig., Sen. Bill No. 260 (2013-2014 Reg. Sess.) as amended June 27, 2013, p. 5), but the legislation was amended several months later to specifically exclude this class of offenders (Legis. Counsel's Dig., Sen. Bill No. 260 (2013-2014 Reg. Sess.) as amended Sept. 3, 2013, p. 9). Subsequent amendments to the statute have maintained the exclusion of one strike juvenile offenders from section 3051 hearings. Instead, the Legislature has provided for a parole hearing for one strike juvenile offenders at age 60 under section 3055. Establishing a longer period of incarceration before parole suitability hearings for juvenile one strike offenders is consistent

with the state's long-standing policy recognizing the unique danger of recidivism posed by violent sexual offenders. (See §§ 290 [registration requirement for sex offenders], 6600 et seq. [civil commitment for sexually violent predators]; Evid. Code, § 1108 [in a prosecution for a sexual offense evidence of defendant's commission of another sexual offense is not inadmissible to prove a disposition to commit the charged crime].) Case law from this court is replete with examples of recidivism by sex offenders." (*Contreras*, *supra*, 4 Cal.5th at p. 419, (dis. opn. of Kriegler, J.), citing *People v. Davis* (2009) 46 Cal.4th 539, 602-603; *People v. Falsetta* (1999) 21 Cal.4th 903, 909-910; *People v. Frank* (1990) 51 Cal.3d 718, 724-725.)

Appellant maintains that even though he is entitled to a transfer hearing and to resentencing, assuming his case is transferred to adult criminal court, we must decide in this appeal whether section 3051 violates the equal protection clause and the Eighth Amendment's prohibition against cruel and unusual punishment. The ripeness requirement, however, "prevents courts from issuing purely advisory opinions, or considering a hypothetical state of facts to give general guidance rather than to resolve a specific legal dispute." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 998.) In other words, a controversy is not ripe until "'. . . the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.]" (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 171.)

Here, the juvenile court has yet to decide whether appellant's case should be transferred to adult criminal court for disposition. If the case is not transferred, the constitutionality of section 3051 will be irrelevant. And even assuming the case is

transferred, the trial court has yet to determine appellant's sentence and his earliest parole eligibility date.  Until a new sentence is imposed, it is uncertain whether the same constitutional concerns will arise.  Accordingly, we decline to issue an advisory opinion addressing those concerns.

It also is well established that constitutional issues are to be avoided when an appeal can be resolved on other grounds. (*Reed v. City and County of San Francisco* (1992) 10 Cal.App.4th 572, 575; see *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1102.)  *Lara* requires that we remand the case to the juvenile court for a transfer hearing.  Assuming the case is transferred to adult criminal court, *Contreras* requires that appellant be resentenced.  The Supreme Court expressly declined to decide whether section 3051 is constitutional.  (*Contreras*, *supra*, 4 Cal.5th at p. 382.)  Instead, the court suggested that the Legislature consider amending the current penal scheme for juveniles.  (*Ibid.*)  It is possible that such amendments will occur before any resentencing or before any subsequent appeal is heard.

Finally, appellant is not precluded from raising his section 3051 argument at the time of resentencing should that occur. Although the argument was mentioned at appellant's last sentencing hearing, the trial court did not reach the issue.  It stated:  "There's no doubt in the Court's mind unless the legislature responds that at some point in time [appellant] would be able to make a successful equal protection challenge.  Because it's irrational that someone with multiple first-degree murder convictions and facing potential sentences of 150 years to life and more would be eligible for parole consideration after 25 years but somebody in [appellant's] position would not be."  Appellant cites

16

no authority suggesting that we must decide the issue for the first time on appeal when the matter has to be returned to the trial court for further proceedings.

*Errors in Amended Abstracts of Judgment*

The parties' briefs identify several errors in the amended abstracts of judgment.[4]  Specifically, the amended abstracts do not reflect the proper participants at the resentencing hearing, the correct date of the hearing, appellant's correct date of birth, and the actual days appellant spent in custody on his original sentence prior to modification.

Given that the matter is being remanded for a transfer hearing and possible resentencing, it is not necessary to correct these amended abstracts of judgment.  But the trial court and the parties should ensure that any new amended abstracts of judgment contain the correct information.

DISPOSITION

The sentence is vacated and the convictions are conditionally reversed.  The matter is remanded to the trial court with directions to refer the case to the juvenile court for a transfer hearing to determine if the case would have been transferred to adult criminal court had the case originally been filed in juvenile court in accordance with current law.

If the juvenile court determines it would not have transferred appellant to criminal court under current law, the juvenile court shall treat appellant's convictions as juvenile adjudications and impose an appropriate disposition within its usual time frame.

---

[4] One amended abstract of judgment is for appellant's determinate sentence, and the other is for his indeterminate sentence.

17

If the juvenile court decides it would have transferred appellant to adult criminal court, the case shall be transferred to criminal court, which shall reinstate appellant's convictions but conduct a resentencing hearing on the vacated sentence. The criminal court shall consider, in light of the opinion in *Contreras*, any mitigating circumstances of appellant's crimes and life, and the impact of any new legislation and regulations on appropriate sentencing. The court is further directed to impose a time by which appellant may seek parole, consistent with *Contreras*. The court shall also prepare new amended abstracts of judgment reflecting the revised sentence and forward copies of the amended abstracts to the Department of Corrections and Rehabilitation.

<u>CERTIFIED FOR PUBLICATION</u>.


PERREN, J.

We concur:


GILBERT, P. J.


TANGEMAN, J.

18

Brian E. Hill, Judge
Superior Court County of Santa Barbara

_____

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan S. Pithy, Shawn M. Webb, Supervising Deputy Attorneys General, Alene M. Games, and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.