Filed 7/2/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B297213 |
| | (Los Angeles County |
| Plaintiff and Respondent, | Super. Ct. No. TA051184) |
| | |
| v. | ORDER MODIFYING |
| | OPINION |
| MARIO SALVADOR PADILLA, | [NO CHANGE IN |
| | JUDGMENT] |
| Defendant and Appellant. | |

THE COURT*

It is ordered that the opinion filed June 10, 2020 be modified as follows:

On page 4, the following language is added after the last sentence of footnote 1, ending with "additional contention.": "If, on remand, the juvenile court transfers the case to criminal court, appellant will be able to reassert this contention on appeal from the reinstatement of his sentence."

The modification does not change the judgment.

_____

*MANELLA, P.J.          WILLHITE, J.          COLLINS, J.

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B297213 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA051184) |
| v. | |
| MARIO SALVADOR PADILLA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge. Conditionally reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Acting Senior Assistant Attorney General, David E. Madeo and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

In 1999, appellant Mario Salvador Padilla was convicted of a murder he committed when he was 16 years old, and was sentenced to life without the possibility of parole (LWOP). Appellant later successfully petitioned for a writ of habeas corpus, challenging his sentence in light of an intervening decision by the United States Supreme Court. The trial court held a resentencing hearing and again imposed the LWOP term. On appeal, we reversed the new sentence and remanded for another resentencing in light of yet another intervening decision by the Supreme Court. At the second resentencing, the trial court again imposed the LWOP sentence.

In the interim, the electorate passed Proposition 57, the "Public Safety and Rehabilitation Act of 2016." Among other things, Proposition 57 prohibits prosecutors from charging juveniles with crimes directly in adult court. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303 (*Lara*).) "Instead, they must commence the action in juvenile court. If the prosecution wishes to try the juvenile as an adult, the juvenile court must conduct . . . a 'transfer hearing' to determine whether the matter should remain in

juvenile court or be transferred to adult court. Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult." (*Ibid*.) The California Supreme Court has held that Proposition 57 applies retroactively to cases not yet final at the time it was enacted. (*Lara, supra,* at 304.)

In this appeal, appellant claims he is entitled to a transfer hearing under Proposition 57 because his judgment is not yet final. Respondent asserts that appellant is not entitled to the benefit of the new law's retroactive application for two reasons. First, respondent argues that appellant's judgment of conviction became final long before Proposition 57's enactment, and his subsequent habeas and resentencing proceedings did not reopen its finality for purposes of that measure. Second, respondent contends that our Supreme Court's holding in *Lara* concerning Proposition 57's retroactive application does not apply to appellant because he is now too old to benefit from rehabilitation as a juvenile.

Because appellant's original sentence was vacated and his sentence is no longer final, and because Proposition 57's primary ameliorative effect is on a juvenile offender's sentence, we conclude that the measure applies to preclude imposition of sentence on appellant as an adult, absent a transfer hearing. Regardless of his current age, appellant fits within our Supreme Court's holding that the voters intended Proposition 57 to apply as broadly as possible. Accordingly, we conditionally reverse appellant's sentence

3

and remand for appellant to receive a transfer hearing in the juvenile court.[1]

## BACKGROUND

In 1998, appellant was charged with first degree murder with special-circumstance allegations and conspiracy to commit murder. He committed the offenses that same year, when he was 16 years old. He was tried as an adult, following a hearing at which he was determined not fit to be dealt with under juvenile court law.

The following year, a jury found appellant guilty as charged, and the court imposed the then-mandatory sentence of LWOP. On appeal, this court reversed one of the special-circumstance findings, but otherwise affirmed. The California Supreme Court denied appellant's petition for review in 2001, and he did not petition for a writ of certiorari.

In 2014, appellant filed a petition for a writ of habeas corpus, seeking resentencing in light of *Miller v. Alabama* (2012) 567 U.S. 460, 465, which held that mandatory LWOP sentences for those under the age of 18 at the time of their crimes violated the Eighth Amendment's prohibition on cruel

---

[1] Appellant also challenges his LWOP sentence as unauthorized under Penal Code section 3051, subdivision (b)(4), which affords juveniles sentenced to an LWOP term an opportunity to parole after incarceration for 25 years. In light of our conditional reversal of his sentence, we need not address this additional contention.

and unusual punishments. The trial court agreed appellant was entitled to resentencing, vacated appellant's sentence, and following a resentencing hearing, again imposed the LWOP term.

While appellant's appeal from his resentencing was pending, the United States Supreme Court decided *Montgomery v. Louisiana* (2016) 577 U.S. ___ [136 S.Ct. 718], which among other things, clarified its holding in *Miller v. Alabama*. Because the trial court had exercised its resentencing discretion without the guidance of *Montgomery*, we reversed and remanded the matter for a new resentencing hearing. (See *People v. Padilla* (2016) 4 Cal.App.5th 656, 661, 674.)

In 2019, on remand from this court, the trial court held a second resentencing hearing and once again sentenced appellant to LWOP. Appellant timely appealed. He contends that in light of Proposition 57, enacted after our opinion on appeal from his first resentencing, he is entitled to a transfer hearing in the juvenile court.

## DISCUSSION
### A. *Governing Principles*
#### 1. *Proposition 57*

At the time appellant was charged in 1998, "'a child could be tried in criminal court only after a judicial determination . . . that he or she was unfit to be dealt with under juvenile court law.'" (*Lara*, *supra*, 4 Cal.5th at 305.) Absent such a determination, "'any individual less than 18

5

years of age who violate[d] the criminal law [came] within the jurisdiction of the juvenile court . . . .'" (*Ibid.*) "Amendments to [the Welfare and Institutions Code] in 1999 and 2000 . . . changed this historical rule. Under the changes, in specified circumstances, prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as an adult." (*Lara, supra,* at 305.)

In November 2016, voters passed Proposition 57, again changing the procedure for charging juveniles. (*Lara, supra,* 4 Cal.5th at 303, 305.) According to the text of this measure, it was intended to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles" and to "[r]equire a judge, not a prosecutor, to decide whether juveniles should be tried in adult court . . . ." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141, (2016 Voter Guide).) The voters mandated that Proposition 57's provisions be "broadly construed to accomplish its purposes." (2016 Voter Guide, *supra,* at § 5, p. 145.)

"'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be

6

rehabilitated.'"[2]  (*Lara, supra,* 4 Cal.5th at 305.)  "Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult."  (*Id.* at 303.)

While Proposition 57's transfer hearing is similar in some respects to the fitness hearing conducted prior to the 1999 and 2000 amendments, there are key differences. Notably, under prior law, juveniles age 16 or older who were accused of certain offenses, including murder, were subject to a rebuttable presumption that they were unfit for juvenile court treatment.  (Former Welf. & Inst. Code, § 707.)  No such presumption applies in transfer hearings under Proposition 57, and the People have the burden to show that the juvenile should be treated as an adult.  (Welf. & Inst. Code, § 707, subd. (a); *Castillero, supra,* 33 Cal.App.5th at 398; *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 715.) In addition, in fitness hearings under prior law, a juvenile court could retain jurisdiction over a juvenile age 16 or older accused of certain offenses, including murder, only if it found the individual suitable for juvenile court treatment under each of five criteria.  (Former Welf. & Inst. Code, § 707, subd. (c) [court must find juvenile suitable "under each and every one of the above criteria"].)  In a transfer hearing under current law, the court must consider those five

---

[2]      Effective January 1, 2019, Senate Bill No. 1391 (2017-2018 Reg. Sess.) further amended the applicable provisions of the Welfare and Institutions Code (*People v. Castillero* (2019) 33 Cal.App.5th 393, 399 (*Castillero*)), but those changes are not relevant to this appeal.

7

criteria, but has broad discretion in applying them, and need not find that all five support juvenile court treatment. (See Welf. & Inst. Code, § 707, subd. (a)(3) ["the court shall consider the criteria specified"]; *Castillero*, *supra*, at 398 [court has broad discretion to apply these statutory criteria].)[3]

One Court of Appeal to consider the effect of Proposition 57 concluded that its primary benefit to juvenile defendants is in potentially affording them the dispositions rendered in juvenile court, rather than the generally much more severe criminal sentences in adult court.[4] (*People v.*

---

[3]    The five statutory criteria are: (1) "[t]he degree of criminal sophistication exhibited by the minor" which may include consideration of such factors as "the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense, the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior, . . . and the effect of the minor's family and community environment and childhood trauma on the minor's criminal sophistication"; (2) "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction"; (3) "[t]he minor's previous delinquent history"; (4) "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor"; and (5) "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor."

[4]    "'There is no "sentence," per se, in juvenile court. Rather, a judge can impose a wide variety of rehabilitation alternatives after conducting a "dispositional hearing," which is equivalent to a sentencing hearing in a criminal court. [Citations.] In the more serious cases, a juvenile court can "commit" a minor to juvenile hall or to the Division of Juvenile Justice (DJJ) . . . . DJJ (*Fn. continued on the next page*.)

*Cervantes* (2017) 9 Cal.App.5th 569, 612, (*Cervantes*) disapproved on another ground in *Lara*, *supra*, 4 Cal.5th at 314-315.)  Indeed, the court noted that "adult criminal sentencing is the biggest disadvantage to being 'tried in adult court.'"  (*Cervantes*, *supra*, at 612.)  Despite its conclusion that Proposition 57 did not apply retroactively (a holding disapproved by *Lara*, as discussed below), *Cervantes* held that the purposes and features of Proposition 57 mandated that on remand for resentencing, a juvenile offender could not be "'sentenced in adult court'" without a prior transfer hearing.  (*Cervantes*, *supra,* at 612.)

## 2. *Retroactive Application of Ameliorative Statutes*

Whether a statute operates retroactively or only prospectively is a matter of legislative intent.  (*People v. Brown* (2012) 54 Cal.4th 314, 319.)  In *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), our Supreme Court concluded that statutory amendments mitigating punishment for an offense applied retroactively to a petitioner who at the time of enactment, had committed the offense but had not yet been

commitments can range from one year or less for nonserious offenses, and up to seven years for the most serious offenses, including murder.  [Citation.]  A minor committed to DJJ must generally be discharged no later than 23 years of age. [Citation.]'" (*Lara, supra*, 4 Cal.5th at 306-307.) Under certain circumstances, that discharge may be further delayed.  (Welf. & Inst. Code, §§ 1780, 1782.)

convicted and sentenced. (*Id.* at 742-743, 748.) The court reasoned that when the Legislature makes an ameliorative change to criminal law, it must have determined the former law was too severe. (*Id.* at 744-745.) As a result, absent indications of a contrary intent, "[i]t is an inevitable inference that the Legislature must have intended that the new statute . . . should apply to every case to which it constitutionally could apply." (*Id.* at 745.) According to the court, an ameliorative criminal statute may be constitutionally applied to acts committed before its passage, "provided the judgment convicting the defendant of the act is not final." (*Ibid.*) Thus, under *Estrada*, absent indications of the legislative body's contrary intent, courts presume it intended an ameliorative statute to apply retroactively to all nonfinal judgments. (See *ibid.*)

Applying this rule in *Lara*, our Supreme Court concluded that Proposition 57 constituted an ameliorative change to the criminal law. (*Lara*, *supra*, 4 Cal.5th at 309.) Finding no contrary indications, it further concluded the voters intended Proposition 57 "'to extend as broadly as possible.'" (*Lara*, *supra*, at 309.) Accordingly, the court held Proposition 57 applied retroactively to "all juveniles charged directly in adult court whose judgment was not final at the time it was enacted."[5] (*Lara*, at 304.) As discussed further

---

[5] While *Lara* expressly addressed juveniles charged directly in adult court, courts have held that its ruling extends equally to individuals who, like appellant, received a fitness hearing under the former law's standards. (*Castillero*, *supra*, 33 Cal.App.5th at (*Fn. continued on the next page*.)

10

below, if, at a retroactive transfer hearing, the juvenile court finds a defendant would have been fit for juvenile court treatment, the defendant's sentence must be reversed, and the juvenile court must then treat the convictions as juvenile adjudications and impose an appropriate disposition. (*Lara*, at 310, 313.)

### 3. *Final Judgments*

Under *Estrada*, "[t]he key date [for retroactivity purposes] is the date of final judgment." (*Estrada, supra*, 63 Cal.2d at 744.) A retroactive ameliorative statute applies in a given case if it "becomes effective prior to the date the judgment of conviction becomes final . . . ." (*Ibid.*) The court did not specify when a judgment becomes "final" for retroactivity purposes.

Several months before *Estrada*, however, the California Supreme Court discussed the finality of a judgment in *In re Spencer* (1965) 63 Cal.2d 400 (*Spencer*). In ruling on a habeas petition raising federal constitutional challenges, the *Spencer* court noted the United States Supreme Court had defined the point of finality as "'where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari . . . elapsed . . . .'" (*Id.* at 405, quoting *Linkletter v. Walker* (1965) 381 U.S. 618, 622, fn. 5.) Finality therefore denoted

399; *People v. Garcia* (2018) 30 Cal.App.5th 316, 324-325 (*Garcia*).)

11

"that point at which the courts can no longer provide a remedy to a defendant on direct review." (*Spencer*, *supra,* at 405.) Our Supreme Court has since applied this definition of finality to the *Estrada* retroactivity rule, stating that an amendatory statute applies in "'any [criminal] proceeding [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it.'" (*People v. Rossi* (1976) 18 Cal.3d 295, 304 (*Rossi*), quoting *Bell v. Maryland* (1964) 378 U.S. 226, 230; accord, *People v. Vieira* (2005) 35 Cal.4th 264, 306 [for purposes of *Estrada* rule, "'a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed'" (quoting *People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn. 5)].)

This rule of finality is easy to apply in a typical case, where a criminal defendant is convicted and sentenced, the judgment is affirmed on appeal, a petition for review in the California Supreme Court is either denied or never filed, and a petition for certiorari in the United States Supreme Court is likewise denied or never filed. But questions have arisen as to how this rule applies in different procedural settings.

In *People v. Jackson* (1967) 67 Cal.2d 96 (*Jackson*), a capital defendant's judgment of death became final when he failed to seek certiorari. (*Id.* at 97, 98.) In a subsequent habeas corpus proceeding, the California Supreme Court reversed his death sentence and remanded for a penalty retrial. (*Id.* at 97.) The defendant was again sentenced to death, and in the automatic appeal, sought to raise both

12

guilt-phase and penalty-phase claims based on *Escobedo v. State of Illinois* (1964) 378 U.S. 478 (*Escobedo*), decided after his original judgment became final but before his penalty retrial. (*Jackson*, *supra*, at 98-99.) Because *Escobedo* applied retroactively only to judgments not yet final at the time it was decided (*In re Lopez* (1965) 62 Cal.2d 368, 372), our Supreme Court rejected the defendant's attempt to challenge his convictions based on that decision, noting that it had reversed only the defendant's death sentence: "The scope of this retrial is a matter of state procedure under which the original judgment on the issue of guilt remains final during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue." (*Jackson*, at 99; accord, *People v. Kemp* (1974) 10 Cal.3d 611, 614 (*Kemp*) [applying *Jackson* to preclude capital defendant's *Escobedo*-based challenge to his final judgment on guilt following penalty retrial].)[6] At the same

6 Our Supreme Court recently observed that "[i]n criminal actions, the terms 'judgment' and '"sentence"' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence [citation]." (*People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*).) *Jackson*'s distinction between the "judgment on the issue of guilt" and the "penalty" for purposes of finality appears to depart from that rule. (*Jackson*, *supra*, 67 Cal.2d at 99.) As we are aware of no non-capital case applying *Jackson*'s rule, it is conceivable this distinction stems from the unique nature of capital trials, which are subject to bifurcated guilt and penalty phases. (See *Phillips v. Vasquez* (9th Cir. 1995) 56 F.3d 1030, 1033, fn. 1 [describing *Kemp* and *Jackson* as holding "that a conviction under California's
(*Fn. continued on the next page*.)

13

time, however, the court agreed that the defendant could rely on *Escobedo* to challenge his new *sentence*, notwithstanding that his "conviction was final" before that case was decided. (*Jackson, supra*, at 100.)

*Jackson* therefore established that a collateral proceeding may reopen the finality of a sentence for retroactivity purposes, even while the conviction remains final. While *Jackson* involved the retroactivity of constitutional law, rather than an ameliorative statute, it applied the same definition of finality later applied in *Rossi*. (See *Jackson, supra*, 67 Cal.2d at 98 ["A judgment becomes final when all avenues of direct review are exhausted"], citing, inter alia, *Spencer, supra*, 63 Cal.2d at 405.)

### B. *Analysis*

Appellant claims he is entitled to a transfer hearing under Proposition 57, asserting its provisions apply retroactively to him. He maintains we should therefore conditionally reverse his judgment and refer the matter to the juvenile court. Appellant argues his judgment is not yet final because we reversed his sentence and remanded the case for resentencing in 2016, and he is now appealing from

---

bifurcated process for adjudicating death penalty cases is a final judgment"].) Yet the interest in retaining the finality of convictions despite ongoing sentencing proceedings applies in other contexts as well. Because we conclude that Proposition 57 applies retroactively to appellant's resentencing, we need not decide whether *Jackson* applies to non-capital cases.

14

that resentencing. Respondent counters that appellant's judgment became final in 2001, when he originally exhausted direct appeal procedures. Respondent contends the reopening of appellant's sentencing following his successful habeas petition had no effect on the finality of his "judgment of conviction," and therefore does not entitle him to the benefit of Proposition 57's retroactive application.

We begin with the simple observation that appellant's sentence is not final: the superior court vacated his original sentence and resentenced him, we then reversed his new sentence and remanded for another resentencing, and appellant has taken this direct appeal from his second resentencing. Because appellant's sentence is still pending on direct appeal, his judgment is not final under our Supreme Court's definition of finality for retroactivity purposes. (See *Jackson, supra*, 67 Cal.2d at 100; *McKenzie, supra*, 9 Cal.5th at 46; *Rossi, supra*, 18 Cal.3d at 304.)

Respondent does not suggest that appellant's sentence is entirely immune to challenges based on retroactive changes to the law. Instead, citing the *Jackson/Kemp* rule, respondent contends that appellant's judgment remains final as to his conviction and all other matters not encompassed by his resentencing, including "pretrial proceedings under Proposition 57," such that he may not benefit from that measure's retroactive operation. We disagree.

Assuming the rule established in these capital cases applies in other contexts, it would not preclude appellant's claim based on Proposition 57 because that measure affects

15

his *sentencing*, independent of its potential effect on his convictions. As the *Cervantes* court observed, a juvenile disposition is far more advantageous to the defendant than a criminal sentence for the same offense: indeed, "adult criminal sentencing is the biggest disadvantage to being 'tried in adult court . . . .'" (*Cervantes*, *supra*, 9 Cal.App.5th at 612.)

Based on the purposes underlying Proposition 57 and the substantially more severe consequences of sentencing in adult court for many juvenile felons, the court in *Cervantes* concluded that a juvenile felon may not be "'sentenced in adult court'" without a prior transfer hearing. (*Cervantes*, *supra*, 9 Cal.App.5th at 612.) Thus, even before its ruling that Proposition 57 was not retroactive was disapproved in *Lara,* the *Cervantes* court recognized that a defendant may not be resentenced on remand without a prior transfer hearing. (*Cervantes*, *supra*, at 612.) *Lara* left undisturbed *Cervantes*'s conclusion about Proposition 57's application to sentencing.

In *Lara* itself, the court stated that "[o]nly if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult." (*Lara, supra*, 4 Cal.5th at 303.) Relying on this language, the court in *People v. Ramirez* (2019) 35 Cal.App.5th 55, 64 (*Ramirez*) held that on a limited remand for resentencing, "the trial court was *required* to consider the effect of Proposition 57 and issue any related orders," thereby rejecting the People's contention that the defendant's request for a transfer

hearing exceeded the scope of a limited remand. The *Ramirez* court explained that although it had remanded the defendants' case for resentencing in light of intervening precedent, "the trial court had jurisdiction to consider any and all factors that would affect sentencing," including Proposition 57. (*Ramirez, supra,* at 64.)

Because Proposition 57's primary ameliorative effect is on a juvenile offender's sentence, independent of the convictions, we conclude it applies retroactively to appellant's nonfinal sentence and requires that he receive a transfer hearing.[7] (See *Lara,* s*upra,* 4 Cal.5th at 303; *Ramirez, supra,* 35 Cal.App.5th at 64; *Cervantes,* s*upra,* 9 Cal.App.5th at 612.) Any resulting effect on appellant's convictions would be a mere byproduct of his required treatment as a juvenile, should the juvenile court decide that he would have been fit for such treatment. (See *Lara, supra,* at 306 ["'there are no "conviction[s]" in juvenile court'"]; Welf. & Inst. Code, § 203 ["An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose"].) A juvenile court's decision in a retroactive transfer hearing to treat the defendant as a juvenile does not disturb the jury's findings; rather, the court must treat the defendant's convictions as juvenile

---

[7]     For similar reasons, we reject respondent's contention that appellant's claim should be denied because it falls outside the scope of our prior limited remand for resentencing. (See *Ramirez, supra,* 35 Cal.App.5th at 64.)

17

adjudications and impose an appropriate disposition. (See *Lara, supra*, at 309-310, 313; see also *id.* at 309-310 ["'Nothing is to be gained by having a "jurisdictional hearing," or effectively a second trial, in the juvenile court'"].) And we see no reason why juvenile court treatment should open the jury's adjudications to challenge under new rules to which they would not otherwise be subject.

Respondent argues that *Lara*'s conclusion about Proposition 57's retroactivity nevertheless does not apply to appellant because "*Lara* considered the specific circumstance of a defendant who had been charged but not sentenced." Respondent maintains it is unlikely the voters intended the provisions of Proposition 57 to apply to those, like appellant, far removed from their teenage years and for whom treatment as a juvenile would likely result in release from custody. These assertions, however, are at odds with our Supreme Court's determination of the electorate's intent -- that Proposition 57 should apply retroactively to "all juveniles charged directly in adult court whose judgment was not yet final at the time it was enacted." (*Lara, supra*, 4 Cal.5th at 304.) It is not for us to say, at this time, whether appellant should be treated as a juvenile offender -- only that our Supreme Court's pronouncement that Proposition 57 should apply "as broadly as possible" encompasses appellant, regardless of his current age. (*Lara, supra*, at 308; see *Ramirez, supra*, 35 Cal.App.5th at 60-61 [affirming referral for transfer hearing for defendant who was 28 years old]; *Garcia, supra*, 30 Cal.App.5th at 321, 330 [ordering transfer

18

hearing for defendant who was over 40 years old].) Moreover, we see no reason why the juvenile court cannot adapt Proposition 57's criteria to assess whether a person like appellant, who committed a crime as a minor but is now an adult, should or should not have been tried as an adult. (See *Lara*, *supra*, at 313 [courts can implement retroactive transfer hearings "without undue difficulty," and the potential complexity in providing such hearings "is no reason to deny [them]"].)

Our conclusion that Proposition 57 applies retroactively to appellant's sentence is consistent with our Supreme Court's determination in *Lara* that the voters intended Proposition 57 "'to extend as broadly as possible'" (*Lara*, *supra*, 4 Cal.5th at 309), i.e., "to every case to which it constitutionally could apply" (*Estrada*, *supra*, 63 Cal.2d at 745). Respondent offers no basis for concluding that this ameliorative amendment may not be applied constitutionally to appellant's sentence. Accordingly, we conclude appellant is entitled to a retroactive transfer hearing under Proposition 57.

## DISPOSITION

In *Lara*, the court approved the remedy one Court of Appeal had ordered for a juvenile defendant who had been convicted and sentenced without having received a transfer hearing. (See *Lara*, *supra*, 4 Cal. 5th at 310, 313.) We afford appellant a similar remedy.

Appellant's sentence is conditionally reversed. The matter is remanded to the trial court with directions to refer the case to the juvenile court for a transfer hearing, to determine if it would have transferred the case to adult criminal court had it originally been filed in juvenile court in accordance with current law.

If the juvenile court determines it would not have transferred appellant to criminal court under current law, it shall treat appellant's convictions as juvenile adjudications and impose an appropriate disposition. If the juvenile court determines it would have transferred appellant to adult criminal court, it shall transfer the case to criminal court, which shall then reinstate appellant's sentence.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

WILLHITE, J.                    COLLINS, J.

20