Filed 8/27/20  P. v. Seth CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RATHA SETH,<br><br>    Defendant and Appellant. | H047307<br>(Santa Clara County<br> Super. Ct. No. 193624) |

Appellant Ratha Seth pleaded guilty to second degree murder in 1997.  In February 2019, Seth filed a petition to vacate the conviction and be resentenced under Penal Code section 1170.95.[1]  The trial court dismissed Seth's petition without reaching its merits, determining that Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (S.B. 1437), which created section 1170.95, unconstitutionally amended Propositions 7 and 115 and violates separation of powers principles.

For the reasons explained below, we conclude, as has every published decision issued by the Courts of Appeal addressing this issue, that S.B. 1437 is constitutional. (See, e.g., *People v. Superior Court of Butte County* (2020) 51 Cal.App.5th 896; *People v. Lopez* (2020) 51 Cal.App.5th 589; *People v. Alaybue* (2020) 51 Cal.App.5th 207

---

[1] Unspecified statutory references are to the Penal Code.

(*Alaybue*); *People v. Johns* (2020) 50 Cal.App.5th 46, 54; *People v. Prado* (2020) 49 Cal.App.5th 480, 483; *People v. Smith* (2020) 49 Cal.App.5th 85, 91, review granted July 22, 2020, S262835; *People v. Bucio* (2020) 48 Cal.App.5th 300, 311–312; *People v. Cruz* (2020) 46 Cal.App.5th 740, 747 (*Cruz*); *People v. Solis* (2020) 46 Cal.App.5th 762, 769 (*Solis*); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 251 (*Lamoureux*); *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 275 (*Gooden*).) We therefore reverse the trial court's order and remand the matter for consideration of Seth's section 1170.95 petition.

## I. FACTS AND PROCEDURAL BACKGROUND

On the evening of February 4, 1996, Seth, who was then 17 years old, drove three friends from Stockton to San Jose to rob a liquor store. Seth sat in the car while two of his friends went inside, each armed with a loaded gun. During the course of the robbery, one of the individuals shot and killed one of the store's owners. After the killing, Seth and his friends drove away from the store with the money they had taken. Seth admitted to providing one of the guns used in the robbery.

Seth appears to have been charged with murder in the commission of a robbery (§§ 187, 190.2, subd. (a)(17)) and conspiracy to commit robbery (§§ 182, subd. (a)(1), 211.)[2] On January 10, 1997, Seth pleaded guilty to second degree murder (§ 190, subd. (a)) and was sentenced on February 21, 1997, to 15 years to life imprisonment. The remaining charges were dismissed.

In February 2019, represented by counsel, Seth filed a petition for resentencing pursuant to section 1170.95 (petition). In the petition, Seth asserted that he had been charged with first degree murder with a special circumstance alleging that the murder had been committed in the commission of a robbery and had been charged as an accomplice.

---

[2] We take these charges from Seth's probation report and the minute order from the change of plea hearing. The actual charging document does not appear in the record on appeal.

Seth also stated he pleaded guilty to second degree murder and was sentenced to 15 years to life in prison and remained incarcerated for the crime. Seth asserted he was eligible for resentencing pursuant to section 1170.95, subdivision (d)(2), because he was not the actual killer, was not a major participant in the underlying felony and did not act with reckless indifference to human life and therefore could not have been convicted of murder under section 189, as amended.

On March 21, 2019, the Santa Clara County District Attorney's Office (district attorney) filed an opposition to Seth's petition. The district attorney did not address the merits of Seth's claim for relief under section 1170.95 but instead argued that S.B. 1437 unconstitutionally amended Propositions 7 and 115 and violated the separation of powers.[3] Seth filed additional briefing, arguing that S.B. 1473 is constitutional.

On September 11, 2019, the trial court conducted a hearing on Seth's petition. The trial court concluded that S.B. 1437 was unconstitutional and dismissed Seth's petition without reaching the merits of his entitlement to relief under section 1170.95. Seth appeals the trial court's dismissal of his petition.

## II. DISCUSSION

Seth contends the trial court erred when it concluded S.B. 1437 violates the California Constitution. Seth acknowledges that the Legislature cannot amend an initiative unless the initiative permits legislative amendments (Cal. Const., art. II, § 10; *People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564 (*Pearson*)) but argues that S.B. 1437 was not an amendment to Proposition 7 or 115. Further, he maintains S.B. 1437 does not violate the separation of powers because the Legislature has the authority to reduce the sentences of final convictions. Seth asks this court to reverse the superior

---

[3] At the hearing on Seth's petition, the district attorney referenced an agreement that Seth had presented a prima facie case under section 1170.95. That agreement is not contained in the record on appeal. As the agreement is not relevant to the limited question posed by this appeal, this court expresses no opinion on it.

court's order dismissing his petition. The Attorney General has filed an amicus curiae brief advancing similar arguments. The Attorney General maintains that S.B. 1437 is constitutional and urges this court to reverse the judgment and remand the matter for further proceedings under section 1170.95.

The district attorney, who represents respondent the People in this matter (respondent), asks this court to affirm the trial court's judgment dismissing the petition. Respondent argues S.B. 1437 unconstitutionally amends both Proposition 7 and Proposition 115.[4] Respondent argues that in enacting S.B. 1437 the Legislature did indirectly what it was prohibited from doing directly—that is, amend the voter-mandated sentences for murder found in Penal Code section 190, as enacted by Proposition 7. Respondent contends that S.B. 1437 also unlawfully rewrote section 189, as amended by Proposition 115, because the new legislation carves out from section 189 certain individuals who would previously have been guilty of murder under section 189. According to respondent, Proposition 115 mandated a first degree murder conviction—not a penalty—for killings during the perpetration of five added felonies, and S.B. 1437 added a limitation to those felonies not contained in the initiative. Therefore, S.B. 1437 is an unconstitutional amendment of Proposition 115. Finally, respondent asserts S.B. 1437 violates the separation of powers because it grants the judiciary "the power of charge selection," and it allows the Legislature to vacate a final judgment imposed by the judicial branch.

A. *Legal Background*

"A statute enacted by voter initiative may be changed only with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval. (Cal. Const., art. II, § 10, subd. (c).)" (*People v. Cooper* (2002) 27

---

[4] The district attorney has filed an unopposed motion for judicial notice of ballot materials for Propositions 7 and 115. We grant that motion. (Evid. Code, § 452, subds. (c), (d).)

Cal.4th 38, 44 (*Cooper*).) Respondent argues that S.B. 1437 violates this provision of the California Constitution by unlawfully changing two prior voter initiatives: Proposition 7 and Proposition 115. To examine the merits of this argument, we first set out the statutory changes made by S.B. 1437, Proposition 7, and Proposition 115 and then summarize the legal principles applicable to the determination of when a legislative enactment constitutes an unlawful amendment of an initiative measure.

      1.   Senate Bill No. 1437

S.B. 1437 was approved by a simple majority of the California Legislature. (*Gooden*, *supra*, 42 Cal.App.5th at p. 277.) "The stated purpose of Senate Bill No. 1437 was to reform the law relating to the felony murder rule and the natural and probable consequences doctrine: 'It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1(f).)" (*Solis*, *supra*, 46 Cal.App.5th at pp. 774–775.)

"Senate Bill No. 1437 amended sections 188 and 189, and added section 1170.95. (Stats. 2018, ch. 1015, §§ 2–4.) Section 188 was amended to add: '[I]n order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189 was amended to add, as subdivision (e): 'A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and

acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.'  (§ 189, subd. (e); Stats. 2018, ch. 1015, § 3.)"  (*Solis*, *supra*, 46 Cal.App.5th at p. 775.)

S.B. 1437 also created a petition process, codified at section 1170.95, which allows individuals who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019, to seek vacatur of their murder conviction and resentencing in the trial court.  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

### 2.  Proposition 7

The purpose of Proposition 7, also known as the Briggs Initiative, "was to substantially increase the punishment for persons convicted of first and second degree murder."  (*Cooper*, *supra*, 27 Cal.4th at p. 42.)  Proposition 7 amended section 190 to "increase[] the punishment for first degree murder from an indeterminate term of life imprisonment to a term of 25 years to life, and for second degree murder from a term of five, six, or seven years to 15 years to life in state prison."  (*Cooper*, at pp. 41–42.)  Proposition 7 did not authorize the Legislature to amend any of its provisions without voter approval.  (*Id*. at p. 44.)

### 3.  Proposition 115

"Proposition 115 amended section 189 by adding more crimes to the list of felonies that bring the felony murder rule into play."  (*Solis*, *supra*, 46 Cal.App.5th at p. 780.)  "Before the enactment of Proposition 115, section 189 read in relevant part: 'All murder which is . . . committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree.' (Former § 189, as amended by Stats. 1982, ch. 950, § 1.)  Proposition 115 added kidnapping (§ 207), train wrecking (§ 218), sodomy (§ 286), oral copulation (former

6

§ 288a), and penetration by a foreign object (§ 289) to the list of underlying crimes in section 189 leading to criminal liability for first degree murder." (*Ibid.*)

### 4. What Constitutes a Legislative Amendment to an Initiative

The Legislature has limited authority to amend an initiative measure. "The Legislature may not amend an initiative statute without subsequent voter approval unless the initiative permits such amendment, 'and then only upon whatever conditions the voters attached to the Legislature's amendatory powers.' " (*Pearson*, *supra*, 48 Cal.4th at p. 568.) S.B. 1437 was neither approved by the voters nor amended according to the procedures laid out in either Proposition 7 or 115. Therefore, if S.B. 1437 constitutes an amendment to either proposition, then it is invalid under article 2, section 10 of the California Constitution.

"An amendment is a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision." (*Cooper*, *supra*, 27 Cal.4th at p. 44.) "But this does not mean that any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes. 'The Legislature remains free to address a " 'related but distinct area' " [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit." ' " (*Pearson*, *supra*, 48 Cal.4th at p. 571.) For the reasons explained in *Pearson*, the key test is whether S.B. 1437 "prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Ibid.*) We turn now to that question.

### B. *Analysis*

#### 1. Senate Bill No. 1437 Did Not Legislatively Amend Proposition 7 or 115

Whether S.B. 1437 prohibits what either Proposition 7 or 115 authorizes, or authorizes what either initiative prohibits, is a question of statutory interpretation subject to de novo review. (*Pearson*, *supra*, 48 Cal.4th at p. 571; *Alaybue*, *supra*, 51 Cal.App.5th at p. 214.) When we interpret an initiative, we "first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of

the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson*, at p. 571.)

It is clear from its text that Proposition 7 principally changed the penalties for murder. As the California Supreme Court has stated, the initiative "substantially increase[d] the punishment for persons convicted of first and second degree murder." (*Cooper*, *supra*, 27 Cal.4th at p. 42.) Nevertheless, respondent contends Proposition 7 also "imported" into the initiative "murder as then defined" (and, therefore, subject to the initiative's prohibition on legislative amendment) through its reference to " 'murder in the first degree' " and " 'murder in the second degree.' " Respondent relies on the following language from Proposition 7: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life. . . . [¶] Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life." (Prop. 7, § 2.) Relying on a rule of statutory construction announced in *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58–59, respondent argues that these references to the definitions of murder are "specific," meaning " ' "such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified." ' " (*Cooper*, at p. 44.) Through these references to first and second degree murder, the electorate—in respondent's view—prevented the Legislature from making future amendments to the definition of murder itself.

A different panel of this court has recently rejected respondent's reading of this language from Proposition 7, concluding the initiative's "references to 'murder in the first degree' and 'murder in the second degree' were general and not specific" and

8

therefore "did not incorporate those definitions, as they existed in 1978, into Proposition 7." (*Alaybue*, *supra*, 51 Cal.App.5th at p. 217.)  We agree with this analysis and reach the same conclusion.  Respondent points to no other provision of Proposition 7 that specifically conflicts with the statutory changes to the definition of murder made by S.B. 1437.

Respondent has asked us to take judicial notice of the ballot materials related to Proposition 7.  Although we have considered them, they do not assist respondent.  As summarized by the Fourth District Court of Appeal, "nothing in Proposition 7's text or its ballot materials reference the elements of murder or more specifically the definition of malice in section 188, the natural and probable consequences doctrine, the felony-murder rule, or section 189.  There is simply no indication that the electorate intended to prohibit subsequent legislation on these issues." (*Cruz*, *supra*, 46 Cal.App.5th at p. 758.)

Respondent contends that the Legislature cannot do indirectly what it may not do directly and asserts that "that is exactly what the Legislature has done with SB 1437." Respondent argues "[i]nstead of the plainly unauthorized act of reducing the mandated penalties for murder set by Proposition 7, the Legislature achieved the same outcome indirectly by changing the offenders to which those voter mandated penalties applied." But respondent ignores that the Legislature is authorized to legislate in a " ' " 'related but distinct area' " ' " of law.  (*Pearson*, *supra*, 48 Cal.4th at p. 571.)  "[D]espite the strict bar on the Legislature's authority to amend initiative statutes, judicial decisions have observed that this body is not thereby precluded from enacting laws addressing the general subject matter of an initiative." (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025.)

In *Cooper*, for example, the California Supreme Court concluded that, notwithstanding that Proposition 7 specifically addressed the topic of postsentence custody credits, the Legislature retained the authority to legislate on the topic of presentence custody credits.  (*Cooper*, *supra*, 27 Cal.4th at p. 47.)  Although both areas clearly fall under the general topic of custody credits and both serve to lengthen (or

shorten) the actual sentence served by a convicted person, the California Supreme Court rejected the very argument advanced by respondent here that " '[t]he Legislature should not be permitted to do indirectly that which it cannot do directly.' " (*Id*. at p. 45.) Instead of relying on the general subject matter of the legislation or on broad descriptions of its practical effect, the California Supreme Court instead looked at what the initiative specifically authorized or prohibited. (*Id*. at p. 47.)[5] Through this more focused lens, it is clear that S.B. 1437's modifications to accomplice liability for murder do not contravene something Proposition 7 specifically authorizes or prohibits. For these reasons, we conclude the statute is not an invalid modification of Proposition 7.

We reach a similar conclusion with respect to Proposition 115. Respondent argues that Proposition 115 substantively changed the meaning of section 189 by adding five additional crimes to the list of felonies for which a conviction of first degree murder based on the felony-murder doctrine was available. Because S.B. 1437 altered the scope of accomplice liability under the felony-murder doctrine, respondent reasons it therefore constitutes an impermissible amendment of Proposition 115.

We do not agree. As recently summarized by another panel of this court, "[w]hile Senate Bill 1437 undoubtedly concerned the same subject matter as Proposition 115—namely felony murder under section 189—the pertinent question is whether Senate Bill

---

[5] Perhaps recognizing that the California Supreme Court's recent decisions on what constitutes a legislative amendment to an initiative are not favorable to its position, respondent suggests that this court should instead apply language from older cases that arguably affords a broader interpretation to the concept of an amendment of a voter initiative. Respondent cites no case from the California Supreme Court for the proposition that this court should ignore our highest court's own understanding of the meaning of article II, section 10 as articulated in its most recent cases. This court is, of course, bound to follow the precedent of the California Supreme Court. (*People v. Perez* (2020) 9 Cal.5th 1, 13 [" 'The decisions of this court are binding upon and must be followed by all the state courts of California.' (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455)"].)

1437 prohibited what Proposition 115 authorized, or authorized what the initiative prohibited. In this case, Senate Bill 1437 clearly did not add to or otherwise modify the list of predicate felonies leading to felony murder liability. Rather, it addressed accomplice liability for felony murder, a related but distinct area of the law that the Legislature was undoubtedly free to address." (*Alaybue*, *supra*, 51 Cal.App.5th at p. 217.) Therefore, S.B. 1437 is not an impermissible legislative amendment of Proposition 115.

In *Alaybue,* this court also rejected the argument advanced by respondent here that other changes made by Proposition 115 render S.B. 1437 an impermissible legislative amendment of the initiative. In *Alaybue*, the District Attorney argued that S.B. 1437 contradicts the implied intent of the voters who approved Proposition 115 because "[a]s amended by Proposition 115, section 190.2 provides that 'every person, not the actual killer, who, with reckless indifference to human life and as a major participant' aids or abets the felony murder may be subject to a capital murder special circumstance. (§ 190.2, subd. (d).) The District Attorney observes that this language is 'nearly identical' to the language added to section 189, subdivision (e) by Senate Bill 1437. Thus, he argues that '[t]he voters' addition of the major participant/reckless indifference language to . . . section 190.2, subdivision (d), without a similar reference in section 189, was intentional,' and that by later amending section 189 to add the major participant/reckless indifference requirement, the Legislature contravened the voters' implied intent." (*Alaybue*, *supra*, 51 Cal.App.5th at p. 218.)

This court in *Alaybue* disagreed with this conclusion, as do we here. "The clear intent of voters in amending section 190.2 was to expand the scope of capital liability in certain felony-murder cases to the extent permissible under federal law. There is no basis for, as the District Attorney contends, concluding that the voters also intended that the same 'major participant' and 'reckless indifference' language for accomplice liability could never be added to section 189." (*Alaybue*, *supra*, 51 Cal.App.5th at p. 218.)

*People v. Orozco* (2020) 9 Cal.5th 111, upon which respondent relies, is not to the contrary. In *Orozco*, the California Supreme Court observed "It is a settled principle of statutory interpretation that when voters have ' " 'employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' " ' " (*Id*. at p. 118.) The question here, however, is not whether we should read language from section 190.2, subdivision (d), into section 189. Instead, we must determine whether, by inclusion of this language in section 190.2, the voters thereby intended that the Legislature would be precluded from redefining section 189. We discern no such intention from the language of Proposition 115 and therefore conclude that S.B. 1437 did not unlawfully amend that initiative measure.

> 2. <u>Senate Bill No. 1437 Does Not Violate the Separation of Powers</u>

Respondent maintains that, through its enactment of section 1170.95, S.B. 1437 violates the separation of powers because it allows the judiciary to select criminal charges, a power enjoyed solely by the executive branch. Respondent emphasizes the remedy set out in section 1170.95, subdivision (e), which provides "[i]f petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." Respondent argues that this provision grants the judicial branch the authority to select criminal charges, and the California Constitution vests that power exclusively in the executive branch.

The California Constitution protects separation of power principles. "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) However, these distinctions are not as stark as this text may indicate. " 'Although the language of California Constitution article III, section 3, may suggest a sharp demarcation between the operations of the three branches of government, California decisions long have recognized that, in reality, the separation

of powers doctrine " 'does not mean that the three departments of our government are not in many respects mutually dependent' " [citation], or that the actions of one branch may not significantly affect those of another branch.' " (*California School Boards Assn. v. State of California* (2019) 8 Cal.5th 713, 731.)

We recognize that "under the separation of powers doctrine, our state's courts must avoid interfering with the executive's prosecutorial functions, including the exercise of its broad charging discretion." (*People v. Solis* (2015) 232 Cal.App.4th 1108, 1122.) But we reject respondent's contention that section 1170.95 interferes with the executive's charging discretion. As this court has already stated, "The plain language of section 1170.95, subdivision (e) permits the trial court to redesignate the vacated conviction as either 'the target offense,' in cases involving the natural and probable consequences doctrine, or 'the underlying felony,' in cases involving the felony-murder rule. In both instances, a prosecutor has already exercised his or her discretion to 'control and determine whom to charge and what charges to bring,' because the prosecutor necessarily identified the target offense or predicate felony in the underlying prosecution. [Citation.] Thus, section 1170.95's resentencing procedure, by its own terms, is limited to offenses that the prosecutor already determined should be presented to the fact finder, either as a predicate felony or as a target offense. Because of this, section 1170.95 does not violate separation of powers principles with regard to the executive's prosecutorial functions." (*Alaybue*, *supra*, 51 Cal.App.5th at p. 219.)[6]

Finally, respondent maintains that section 1170.95 violates separation of powers principles because through its enactment the Legislature has impermissibly encroached

---

[6] The trial court dismissed Seth's petition on constitutional grounds and therefore did not reach the merits of Seth's claim for relief under section 1170.95. To the extent that respondent argues that the trial court's resentencing of Seth would violate separation of powers principles because of the specifics of how Seth was originally charged, that claim is not yet ripe for our review. (See *People v. Garcia* (2018) 30 Cal.App.5th 316, 328–329.)

on the judicial branch's authority over final judgments. In making this argument, respondent relies principally on the United States Supreme Court's decision in *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211 (*Plaut*), where the court held unconstitutional a provision of the Securities Exchange Act of 1934 that allowed the refiling of private civil actions that had previously been dismissed. (*Plaut*, at p. 240.) In *Plaut*, the United States Supreme Court was careful to limit its analysis to separation of powers principles articulated in the federal constitution. (*Id*. at p. 217.)

The California Supreme Court adopted the analysis in *Plaut* when reviewing the constitutionality under the California Constitution of a statute that similarly allowed previously dismissed cases to be refiled. The California Supreme Court stated, "Following *Plaut* [*supra*, 514 U.S. 211], which we find both consistent with California law and persuasive for state separation of powers purposes, we conclude that refiling legislation cannot be applied retroactively to reopen court cases that had already been dismissed, if the dismissals had become final judgments, under the law of finality which then pertained, before the refiling provision became effective." (*People v. Bunn* (2002) 27 Cal.4th 1, 5; see also *People v. King* (2002) 27 Cal.4th 29, 36 [holding, in the companion case to *Bunn*, that the refiling of charges was constitutionally invalid because "the 1997 refiling provision cannot be retroactively applied in this case to allow the refiling of charges that had been dismissed, at both the trial and appellate levels, before the 1997 provision became effective"].) Relying on the reasoning in *Plaut* and *Bunn*, respondent argues that section 1170.95 similarly violates separation of powers principles because it allows defendants to petition to reopen final judgments.

In a careful analysis of this argument, the Fourth District Court of Appeal rejected the contention that section 1170.95 violates separation of powers principles. (*Lamoureux*, *supra*, 42 Cal.App.5th 241.) We agree both with the court's conclusion in *Lamoureux* and in its legal analysis. As it explained, the holdings in *Plaut* and *Bunn* were limited to legislation that allowed for the reopening of final judgments of dismissal,

14

instead of final judgments of conviction—the subject of section 1170.95. (*Id*. at pp. 259, 261.) In *Lamoureux,* the court described the significantly different liberty interests at stake in the context of final judgments of conviction, and it observed that it had found no cases applying the separation of powers analysis set out in *Bunn* to this context. (*Id*. at p. 261.) Further, even a petitioner who secures relief under section 1170.95 must be resentenced by the trial court "subject to constraints arising from the original judgment of conviction," further undercutting the contention that section 1170.95 interferes with the finality of judgments. (*Lamoureux*, at p. 262.)

In rejecting a similar challenge to section 1170.95, this court noted the ubiquity of legislation similar to section 1170.95 in California law. Under California law, "it 'appears settled that a final judgment is not immune from the Legislature's power to adjust prison sentences for a legitimate public purpose.' [Citations.] '[T]here is substantial precedent for remedial legislation authorizing the ameliorative reopening of final judgments of conviction to benefit criminal defendants.' [Citation.] The prevalence of such legislation all but 'confirms there is nothing especially unique about section 1170.95,' as it represents 'a legitimate and ordinary exercise of legislative authority.' " (*Alaybue*, *supra*, 51 Cal.App.5th at p. 221.)

Respondent points out that courts have not examined this legislation in light of the separation of powers arguments it brings against S.B. 1437. But the existence of a number of similar measures is relevant to the constitutional analysis under California law. After all, the absence of analogous legislation played a significant role in the Supreme Court's federal constitutional analysis in *Plaut*. The United States Supreme Court stated, "Apart from the statute we review today, we know of no instance in which Congress has attempted to set aside the final judgment of an Article III court by retroactive legislation. That prolonged reticence would be amazing if such interference were not understood to be constitutionally proscribed." (*Plaut*, *supra*, 514 U.S. at p. 230.) The distinctly

15

different context of California law underscores the limited relevance of *Plaut* to the constitutionality of S.B. 1437.

For these reasons, we reject respondent's contentions that either S.B. 1437 or section 1170.95 violates the California Constitution.

### III. DISPOSITION

The trial court's September 11, 2019 order is reversed and the matter is remanded with directions to consider Seth's section 1170.95 petition.

_____
Danner, J.

WE CONCUR:


_____
Premo, Acting P.J.



_____
Bamattre-Manoukian, J.




**H047307**
***People v. Seth***