Filed 9/30/22  P. v. Arroyo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | C094263 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 0006360, SC030688A) |
| v. | |
| ARTEMIO MENDEZ ARROYO, | |
| Defendant and Appellant. | |

In 1980, defendant Artemio Mendez Arroyo was convicted of second degree murder and sentenced to an indeterminate term, although he was a juvenile when he committed the offense.  In 2020, he sought to take advantage of ameliorative changes in juvenile law.  He requested and received a *Franklin* hearing (*People v. Franklin* (2016) 63 Cal.4th 261, 277 (*Franklin*)) to place on the record evidence of his characteristics as a youth for an eventual youth offender parole hearing.  Then, claiming the *Franklin* hearing

1

rendered his judgment nonfinal, defendant moved to vacate his sentence and remand for a transfer hearing in juvenile court under Proposition 57. The trial court denied the motion.

Defendant claims the trial court erred in denying his motion to remand for a transfer hearing. He asserts the *Franklin* hearing rendered his judgment nonfinal and subject to Proposition 57. Alternatively, he argues Proposition 57 applies to all convictions, final or not, and not providing him relief under Proposition 57 denies him his right to equal protection.

We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant's conviction

The relevant facts are not disputed. In September 1979, the district attorney's office filed a juvenile petition charging defendant with murder. (Pen. Code, § 187.) (Statutory section citations that follow are found in the Penal Code unless otherwise stated.) At the time of the offense, defendant was 17 years old.

The following month, defendant was deemed unfit to be treated as a juvenile. At that time, a minor 14 years of age or older who was alleged to have committed murder was presumed not to be a fit and proper subject for treatment under the juvenile court law. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548.) The juvenile court transferred defendant's case to criminal court where he would be tried as an adult. (Former Welf. & Inst. Code, § 707.)

An information filed against defendant charged him with murder. On February 13, 1980, defendant pleaded guilty to second-degree murder. On or about June 24, 1980, the court sentenced defendant to a state prison term of 15 years to life. Defendant did not file an appeal.

In August 1980, defendant was received by the California Department of Corrections and Rehabilitation where, after nine parole denials, he remains.

2

<u>Changes</u> <u>in</u> <u>juvenile</u> <u>law</u>

The legal landscape regarding the trials and sentences of juveniles as adults significantly changed years after defendant was convicted. One change resulted in mandatory parole hearings for certain youth offenders who had been sentenced to mandatory and lengthy prison terms. Responding to precedent from the United States Supreme Court and the California Supreme Court declaring that mandated life without parole sentences and their equivalents imposed on juveniles are unconstitutional, the Legislature in 2014 adopted a bill, Senate Bill No. 260 (Sen. Bill 260), that guaranteed a parole hearing for many such youth offenders to obtain release upon a showing of maturation and rehabilitation, their sentences notwithstanding. (*Franklin, supra*, 63 Cal.4th 261.) Under this act as amended, a person incarcerated for a "controlling offense" committed when the person was 25 years of age or younger is eligible for release on parole at a "youth offender parole hearing." (§ 3051, subds. (a)(1), (b).) Depending on the offense, the parole hearing must be held no later than the prisoner's 15th, 20th, or 25th year of incarceration. (§ 3051, subd. (b).) The right to a youth offender parole hearing applies retrospectively to all eligible youth offenders regardless of their date of conviction. (*Franklin, supra*, 63 Cal.4th at p. 278.)

To provide a meaningful opportunity for the youth offender to obtain release and for the Board of Parole Hearings to fulfill its obligation to "give great weight" to youth-related factors (§ 4801, subd. (c)), the prisoner must be guaranteed a sufficient opportunity to put on the record relevant information of his or her characteristics and circumstances at the time of the offense. (*Franklin, supra*, 63 Cal.4th at pp. 282-284.) Hearings for admitting this evidence are referred to as *Franklin* hearings or proceedings. (See *In re Cook* (2019) 7 Cal.5th 439, 458-459 (*Cook*).) In *Franklin* hearings, the trial court may receive submissions and testimony pursuant to procedures set forth in section

3

1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. (*Franklin, supra*, 63 Cal.4th at p. 284.)

A second significant change in juvenile criminal law eliminated a prosecutor's ability to file charges against a juvenile directly in criminal court and prosecute the juvenile as an adult. In 2016, the voters adopted Proposition 57, the "Public Safety and Rehabilitation Act of 2016," which prohibits prosecutors from charging juveniles directly in adult court. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303 (*Lara*).) Today, if the prosecutor wishes to try a 16- or 17-year old juvenile as an adult, even for murder, the juvenile court must conduct a "transfer hearing" to determine whether the case should remain in juvenile court or be transferred to adult criminal court. (*Id.* at p. 305; Welf. & Inst. Code, § 707, subd. (a).) A minor who committed murder is no longer presumed to be unfit for juvenile court. "Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult. (See Welf. & Inst. Code, § 707, subd. (a).)" (*Lara,* at p. 303., fn. omitted.)

In *Lara*, the California Supreme Court ruled that Proposition 57 is retroactive and applies to all juveniles charged directly in adult court whose judgments were not final as of the proposition's enactment in 2016. (*Lara, supra*, 5 Cal.5th at pp. 303-304.)

This matter

Defendant sought to take advantage of the changes enacted by Sen. Bill 260 and Proposition 57. On September 8, 2020, he filed in the trial court a request for a *Franklin* hearing, which the court granted. While that hearing was pending, on April 1, 2021, he filed a motion to vacate his judgment (but not his plea) and remand his case to juvenile court for a transfer hearing under Proposition 57. He argued that Proposition 57 applied retroactively to convictions that were not final as of its enactment, and the trial court's granting of his request for a *Franklin* hearing "unfinalized" his conviction. A *Franklin* hearing, he claimed, was an extended portion of the original sentencing hearing and

4

reopened sentencing, rendering his conviction not final and subject to Proposition 57. Defendant admitted that Division Five of the Second District Court of Appeal rejected his argument in *People v. Lizarraga* (2020) 56 Cal.App.5th 201 (*Lizarraga*).

The trial court denied the motion to remand.

## DISCUSSION

Defendant contends the trial court erred in denying his motion to remand for the following reasons: (1) his request for a *Franklin* hearing rendered his conviction nonfinal, and Proposition 57 applies retroactively to all convictions which are not yet final; (2) even if his conviction is final, he is entitled to remand because Proposition 57 applies retroactively to all juvenile offenders, including those whose convictions are final; and (3) not remanding his case for a new transfer hearing would violate his right to equal protection of the law.

I

*Finality of Conviction*

Defendant claims he was entitled to remand under Proposition 57 because the law applies to convictions not final upon its enactment, and his *Franklin* hearing "essentially reopens, un-finalizes, and corrects the prior sentence." As mentioned earlier, the United States Supreme Court and the California Supreme Court issued several rulings under the Eighth Amendment which limited a court's sentencing authority of juvenile offenders. Of relevance here, the United States Supreme Court in *Miller v. Alabama* (2012) 567 U.S. 460, 476 (*Miller*) ruled that a court may impose a sentence of life without parole (LWOP) on defendants who committed homicide when they were under the age of 18 so long as the sentence was not mandatory; "that is, only so long as the sentencer has discretion to 'consider the mitigating qualities of youth' and impose a lesser punishment." (*Jones v. Mississippi* (2021) __ U.S. __ [209 L.Ed.2d 390, quoting *Miller,* at p. 476].)

5

In *Franklin*, the California Supreme Court extended the *Miller* rule to sentences imposed on juvenile homicide offenders which are the functional equivalent of LWOP. "[A] juvenile may not be sentenced to the functional equivalent of LWOP for a homicide offense without the protections outlined in *Miller*." (*Franklin, supra*, 63 Cal.4th at p. 276.)

Sen. Bill 260, including section 3051 and its requirement of a timely youth offender parole hearing, was the state's method to conform juvenile sentencing with these and other juvenile sentencing authorities. (*Franklin, supra*, 63 Cal.4th at p. 277.) Defendant asserts that because a *Franklin* hearing "is necessary to cure the unconstitutionality of the prior sentence," it is a substantive hearing that renders the prior sentence nonfinal.

Defendant also states that both section 1204 and California Rules of Court, rule 4.437, the procedures followed in a *Franklin* hearing, are procedural provisions for sentencing. From this, he asserts that *Franklin* hearings can be procedurally valid only if they are extended portions of the original sentencing hearing. Otherwise, they would be without proper statutory authorization.

Defendant raises an additional argument. In *Cook*, the California Supreme Court declared the statutory authority for a *Franklin* hearing. It determined that section 1203.01, a statute authorizing a trial court to receive postjudgment submissions for transmission to the Board of Parole Hearings, augmented by the court's inherent authority to craft necessary procedures under Code of Civil Procedure section 187, authorizes a trial court to convene a *Franklin* hearing for a youth offender whose judgment is final. (*Cook, supra*, 7 Cal.5th at p. 455.) Defendant argues that if a *Franklin* hearing is an expansion of section 1203.01, it must be considered an extension of the original sentencing hearing.

We disagree with defendant's arguments. A *Franklin* hearing does not reopen a final judgment or sentencing. (*Lizarraga, supra*, 56 Cal.App.5th at p. 207.) It is a

6

"remedy of evidence preservation." (*Cook, supra*, 7 Cal.5th at pp. 446-447.) It is an "evidence preservation process" to gather evidence for the eventual determination of parole, not a process to reopen or reconsider a sentence. (*Id*. at p. 450.) Indeed, "a *Franklin* proceeding is *unrelated* to the validity of the defendant's sentence. Neither the entitlement to a youth offender parole hearing, *nor the evidence preservation process 'disturb[s] the finality of state convictions.'* (*Montgomery* [*v. Louisiana* (2016)] 577 U.S. [190, 212] [].)" (*Cook, supra*, 7 Cal.5th at p. 451, italics added.) Because defendant's judgment remained final and was not reopened when the *Franklin* hearing was granted, it was not subject to Proposition 57, which was enacted long after plaintiff's conviction became final.

When the Legislature adopted section 3051's provision of youth offender parole hearings, it intended that the provision of parole hearings would not reopen the underlying sentence. It "did not envision that the original sentences of eligible youth offenders would be vacated and that new sentences would be imposed to reflect parole eligibility during the 15th, 20th, or 25th year of incarceration. The continued operation of the original sentence is evident from the fact that an inmate remains bound by that sentence, with no eligibility for a youth offender parole hearing, if 'subsequent to attaining [26] years of age' the inmate 'commits an additional crime for which malice aforethought is a necessary element . . . or for which the individual is sentenced to life in prison.' (§ 3051, subd. (h); [].) But section 3051 has changed the manner in which the juvenile offender's original sentence operates by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole. The Legislature has effected this change by operation of law, with no additional resentencing procedure required." (*Franklin, supra*, 63 Cal.4th at pp. 278-279.)

Just as the provision of a youth offender parole hearing does not affect the underlying sentence, a *Franklin* hearing to ensure a fair parole hearing also does not affect a defendant's final judgment. When a youth offender receives a *Franklin* hearing,

7

the offender "need not be resentenced" because the sentence remains valid. (*Franklin, supra*, 63 Cal.4th at p. 284.) At a *Franklin* hearing, the youth offender "may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law' [citation]." (*Franklin, supra*, 63 Cal.4th at p. 284.) But a *Franklin* hearing does not reopen or affect the defendant's sentence.

Plaintiff's claim that a *Franklin* hearing renders the sentence nonfinal because the hearing is necessary to cure the unconstitutionality of the sentence is not correct. Sen. Bill 260 cured an unconstitutional juvenile sentence by mandating a parole hearing where a meaningful opportunity for parole was not part of the original sentence. (*Franklin, supra*, 63 Cal.4th at pp. 277-280.) A *Franklin* hearing is designed to ensure only that the eventual parole hearing is fair. The California Supreme Court has expressed no view on whether a *Franklin* hearing is constitutionally required. (*Cook, supra*, 7 Cal.5th at p. 458.) It has, however, stated that a *Franklin* hearing is not related to the sentence and does not reopen the underlying conviction. (*Id.* at p. 451.)

Plaintiff's argument that *Franklin* hearings are without statutory authorization unless they are considered to be extended parts of the original sentencing hearing is also incorrect. The California Supreme Court has determined that *Franklin* hearings have statutory authorization separate from sentencing hearings. Although *Franklin* hearings follow the procedures provided in section 1204 and California Rules of Court, rule 4.437,

8

those provisions are not the statutory basis for the hearings. The California Supreme Court in *Cook* held that in cases with final judgments such as defendant's, section 1203.01, subdivision (a), augmented by the court's inherent authority to craft necessary procedures under Code of Civil Procedure section 187, grants the trial court authority to conduct a *Franklin* hearing. (*Cook, supra*, 7 Cal.5th at p. 452.) That statute authorizes the judge, the district attorney, defense counsel, and the investigating law enforcement agency, "after judgment has been pronounced," to file with the court clerk brief statements of their views regarding the person "convicted or sentenced and the crime committed," along with any probation reports. (§ 1203.01, subd. (a).) The clerk will forward the statements to the Department of Corrections and Rehabilitation, thereby providing information to assist the effective administration of law, including parole laws. (§ 1203.01, subd. (a); *Cook, supra*, 7 Cal.5th at p. 453; *In re Minnis* (1972) 7 Cal.3d 639, 650.)

The Supreme Court determined that section 1203.01's purpose parallels that of a *Franklin* hearing, which is to preserve information and make it available at an eventual youth offender parole hearing. (*Cook, supra*, 7 Cal.5th at p. 453.) The court also stated that recognizing a trial court's authority under section 1203.01 to gather youth offender evidence effectuates sections 3051 and 4801. (*Ibid.*) Under *Cook*, *Franklin* hearings have statutory authority separate from the actual sentencing.

Defendant's argument that if a *Franklin* hearing is an expansion of section 1203.01, it must be considered an extension of the original sentencing hearing is also without merit. The process provided in section 1203.01 is not part of the defendant's actual sentence. It occurs "after judgment [is] pronounced." (§ 1203.01, subd. (a).) In a criminal case, the trial court's oral pronouncement of sentence constitutes the judgment. (*People v. Villatoro* (2020) 44 Cal.App.5th 365, 369.) Thus, the section 1203.01 process begins after sentencing.

9

Moreover, nothing in section 1203.01 authorizes the court to reconsider the sentence. It merely authorizes the court and the participating parties to submit information about the defendant for use by the Department of Corrections and Rehabilitation. Thus, an extension of section 1203.01 to authorize a *Franklin* hearing, like section 1203.01 itself, is not part of the sentence or judgment and does not authorize revisiting the original sentence.

Defendant cites two cases for the proposition that a *Franklin* hearing reopens sentencing and makes the judgment subject to Proposition 57. Both cases are distinguishable. In *People v. Hargis* (2019) 33 Cal.App.5th 199 (*Hargis*), the court of appeal ruled that the defendant was entitled to a transfer hearing under Proposition 57 where it had earlier on *direct appeal* remanded the case for the trial court to conduct a *Franklin* hearing, and the electorate enacted Proposition 57 before remittitur issued. The defendant's judgment was not final when the proposition was enacted. (*Hargis,* at pp. 203-205, 207.) For purposes of a statute's retroactivity, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has elapsed. (*Id.* at p. 205, fn. 3.) And the court of appeal's limited remand for a *Franklin* hearing did not deny the trial court of power to hear a motion on an issue that could not have been raised on the defendant's prior appeal and which altered the trial court's authority to adjudicate the case in adult court in the first instance. (*Id.* at p. 207.)

Defendant cites this case as precedent establishing that the trial court had authority to consider his "request for remand despite the limited purpose of the remand." *Hargis*, however, does not establish that the trial court, because it had granted defendant's request for a *Franklin* hearing, should have also granted his request to remand for a transfer hearing. The *Hargis* defendant was entitled to a transfer hearing because his case was not final when Proposition 57 was enacted. (*Hargis, supra*, 33 Cal.App.5th at pp. 204-205, 207.) The court of appeal simply held that the remittitur and the remand for the *Franklin* hearing did not prevent the trial court from granting relief under Proposition 57.

10

Moreover, even if the remittitur had restricted the trial court from hearing the motion for a transfer hearing, the defendant had raised the issue on direct appeal, and he was entitled to the hearing. The scope of the remand ultimately was not relevant. (*Id*. at p. 208.)

Here, of course, defendant's conviction was final decades before Proposition 57 was enacted. Nothing in *Hargis* grants defendant a right to a transfer hearing where his case was final before Proposition 57 was enacted. That the judgment in *Hargis* was not final because a *Franklin* hearing was pending on remand in the direct appeal does not mean a *Franklin* hearing renders a final judgment not final. In both cases, the relevant issue to determine Proposition 57's applicability is whether the case was final when Proposition 57 was enacted, not merely whether a *Franklin* hearing has been granted. *Hargis* does not support defendant's contentions.

A second case cited by defendant also is distinguishable. In *People v. Garcia* (2018) 30 Cal.App.5th 316 (*Garcia*), the youth offender in 2012, pursuant to a writ of habeas corpus based on *Miller* and related authorities, was resentenced from a sentence of 94 years to life to 50 years to life. The defendant appealed, and in supplemental briefing, he contended he was entitled to a transfer hearing under Proposition 57. (*Id*. at pp. 319-320, 321.) The court of appeal agreed because the appeal from the resentencing was not yet final. (*Id*. at pp. 324-325.)

Defendant claims that just as the defendant in *Garcia*, he should receive a transfer hearing pursuant to Proposition 57 "because his case is ongoing as a result of his habeas petition." There is no habeas corpus petition contained in the record before us. Defendant also provides no evidence indicating he has filed any kind of habeas petition. Even if defendant had filed a habeas petition, that fact alone would not render his sentence not final. "Merely filing a collateral attack does not make the judgment nonfinal." (*People v. Padilla* (2022) 13 Cal.5th 152, 162 (*Padilla*).)

In supplemental briefing on the application of *Padilla* to this appeal, which was released after briefing was completed, defendant raises another argument for why his

11

sentence is not final. In that case, the juvenile offender was convicted in adult court of murder and sentenced to LWOP. After *Miller* was released, limiting a court's authority to sentence a juvenile murderer to LWOP, the defendant petitioned for habeas corpus to be resentenced. The trial court granted the petition but resentenced the defendant to LWOP. The court of appeal vacated the sentence and remanded for resentencing. The voters approved Proposition 57 while the sentence was vacated. The trial court again sentenced the defendant to LWOP. The defendant appealed, asserting he was entitled to a transfer hearing at resentencing under Proposition 57 because his case became nonfinal when the sentence was vacated. The court of appeal agreed and remanded the case for a second time and for the trial court to comply with Proposition 57. (*Padilla, supra*, 13 Cal.5th at pp. 158-159.)

The California Supreme Court affirmed. It stated, "When [the defendant's] sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and [the defendant] regained the right to appeal whatever new sentence was imposed. His judgment thus became nonfinal, and it remains nonfinal in its present posture because the Court of Appeal ordered a second resentencing, from which the Attorney General now appeals." (*Padilla, supra*, 13 Cal.5th at pp. 161-162.) Therefore, Proposition 57 applied.

Defendant here contends the *Padilla* court's decision did not rest on the vacatur. He claims the Supreme Court held that the conviction was nonfinal because the resentencing was remedying an illegal sentence under *Miller*. He further argues that this reasoning is applicable here: *Miller* rendered his original sentence unconstitutional and void because the sentence was the functional equivalent of LWOP and the trial court in 1980 did not consider youth related factors. Because the sentence was void, it could never have been truly final. He thus claims the *Franklin* hearing was the remedy to cure the unconstitutionality by providing an opportunity for defendant to present evidence of

12

youth related factors. In other words, the sentence was already nonfinal before defendant requested a *Franklin* hearing.

Initially, we disagree with defendant that his sentence was the functional equivalent of LWOP and void under *Miller*. Defendant was sentenced to 15 years to life for a murder committed at the age of 17. For the sake of comparison, a life sentence with parole eligibility during the *25th* year of incarceration when a defendant would be 41 years old is not the functional equivalent of LWOP. (*Franklin, supra*, 63 Cal.4th at p. 279.) Under that standard, defendant's less severe sentence cannot in any way be the functional equivalent of LWOP.

Defendant argues his sentence was the functional equivalent because Sen. Bill 260 applies to his sentence, and Sen. Bill 260's purpose was to bring sentencing into conformity with *Miller*. But defendant's sentence conformed with *Miller* and already provided him with an earlier parole hearing than did Sen. Bill 260. And just because Sen. Bill 260 provided relief for some sentences that did not violate *Miller*, such as defendant's, does not mean the statute's application renders defendant's sentence a violation of *Miller*.

More significantly, we disagree with defendant's reading of *Padilla*. The legality of the defendant's sentence in *Padilla* could not have been the ground upon which the Supreme Court determined the sentence was nonfinal because that issue was not presented to the court. The issue presented was "whether Proposition 57 applies during resentencing when a criminal court sentence imposed on a juvenile offender before the initiative's passage has since been *vacated*." (*Padilla, supra*, 13 Cal.5th at p. 158, italics added.) The court did not base its decision on the reason the sentence was vacated. It said the judgment "became nonfinal" "[w]hen [the defendant's] sentence was vacated" because at that time, "the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and [the defendant] regained the right to appeal whatever new sentence was imposed." (*Id*. at pp. 161-162.)

13

We agree with the Attorney General that, of most relevance for our purposes, what "*Padilla* did not hold was that a *Franklin* hearing vacates a sentence or otherwise reopens a previously final judgment." Defendant's *Franklin* hearing did not vest the trial court with discretion to resentence him.

"When a defendant is resentenced, there is no longer a final judgment of conviction because there is no existing sentence." (*Lizarraga, supra*, 56 Cal.App.5th at p. 207.) Here, unlike in *Garcia* and *Padilla*, defendant was not resentenced—pursuant to a habeas petition, the *Franklin* hearing, or otherwise. Unlike in *Hargis*, his conviction was final and remained final for purposes of applying Proposition 57. Because the grant of the *Franklin* hearing did not render defendant's conviction nonfinal, Proposition 57 does not apply to defendant's case. The trial court properly denied defendant's motion to remand for a transfer hearing.

II

*Retroactivity of Proposition 57*

In *Lara*, the California Supreme Court declared that the part of Proposition 57 requiring a transfer hearing before prosecuting a juvenile in criminal court "applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara, supra*, 4 Cal.5th at p. 304.) Unlike defendant's case, the youth offender's case in *Lara* was not final when Proposition 57 was enacted. Defendant asserts that *Lara* does not address his situation, and in order for the purposes of Proposition 57 to be met, courts must apply the proposition retroactively to all juvenile offenders regardless of the date of conviction.

In general, new criminal laws do not apply to prosecutions initiated before the law went into effect. (§ 6; *In re Estrada* (1965) 63 Cal.2d 740, 746-748 (*Estrada*).) In *Estrada*, however, the California Supreme Court recognized an exception to this rule. It held that new laws that mitigate punishment are presumed to apply to cases charged

14

before the law's enactment but which are not yet final. (*Id.* at p. 745.) "Absent evidence to the contrary, we presume that when the Legislature 'amends a statute so as to lessen the punishment,' it 'must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.' (*Ibid.*) . . . . This presumption applies to ameliorative laws enacted by ballot proposition as well." (*Padilla, supra*, 13 Cal.5th at p. 160.)

The California Supreme Court has not delineated the constitutional parameters of the " 'Legislature's power to intervene in judicial decisionmaking,' " but it has stated that "any restrictions on that power would attach at 'the conclusion of a criminal proceeding as a whole' — i.e., when ' "the last word of the judicial department with regard to a particular case or controversy" ' has issued. [Citations.]" (*Padilla, supra*, 13 Cal.5th at p. 161.) "The key date is the date of final judgment. . . . [¶] . . . [¶] The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Estrada, supra*, 63 Cal.2d at pp. 744, 745.)

This is not to say the Legislature or the electorate cannot enact laws which affect final judgments. The California Supreme Court has approved laws "that alter indisputably final cases when they create new rules or procedures by which a defendant may seek relief." (*Padilla, supra*, 13 Cal.5th at p. 161; *People v. Esquivel* (2021) 11 Cal.5th 671, 677 (*Esquivel*).) However, where the new legislation provides no new rules or procedures for relief, the *Estrada* presumption applies: "[A]bsent a discernable intent to the contrary, ameliorative criminal laws apply to all nonfinal cases." (*Padilla,* at p. 162.) And they apply retroactively only to nonfinal cases. (*Estrada, supra*, 63 Cal.2d at p. 746.)

The *Estrada* presumption applies to Proposition 57. "Proposition 57 reflects a decision by California's voters that the range of punishments meted out in criminal court is too severe for most juvenile offenders. In accord with *Estrada*, our presumption is that

15

the voters wanted that reduction in punishment to stretch ' "as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." ' [Citations.]" (*Padilla, supra*, 13 Cal.5th at p. 162.)

There is no discernable contrary intent by the voters. Nothing in Proposition 57 itself or its ballot materials rebuts application of the *Estrada* presumption. (*Lara, supra*, 4 Cal.5th at p. 309.) The California Supreme Court reviewed those ballot materials in *Lara* "and unanimously found they were 'inconclusive' and 'silent on the question' of retroactivity. ([*Ibid*.])" (*Padilla, supra*, 13 Cal.5th at p. 169.) Proposition 57 also does not contain an exclusive mechanism or new rule by which youth offenders convicted as adults whose convictions are final could petition for a transfer hearing. (2016 Cal. Legis. Serv. Prop. 57 (West).) Accordingly, Proposition 57's retroactivity extends only to defendants whose cases were not final at the time Proposition 57 was enacted. (Accord, *Lizarraga, supra*, 56 Cal.App.5th at pp. 207-208.)

"A case is final when 'the criminal proceeding as a whole' has ended (*Esquivel, supra*, 11 Cal.5th at p. 678) and 'the courts can no longer provide a remedy to a defendant on direct review' (*In re Spencer* (1965) 63 Cal.2d 400, 405 []]." (*Padilla, supra*, 13 Cal.5th at p. 161.) The judgment is final " ' "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed." ' [Citations.]" (*Id.* at p. 162.)

Here, defendant's judgment became final before Proposition 57 was enacted, as the courts at that time could not provide defendant a remedy on direct review. And the judgment remains final, as no court has vacated it as a result of collateral attack. As a result, the ameliorative provisions of Proposition 57 are not available to defendant.

## III

### *Equal Protection*

Defendant contends that not granting him the benefits of Proposition 57 denies him his constitutional right to equal protection under the law. He asserts the state has a compelling interest in protecting the public from those who commit crimes, and the distinction drawn by Proposition 57's retroactivity under *Estrada* is not necessary to fulfill that purpose. Defendant argues that even if a rational basis standard applies, there is no rational basis for excluding persons whose convictions were final before Proposition 57 was enacted from the measure's benefits.

Neither argument is persuasive. We do not apply strict scrutiny in this instance, and a rational basis supports the distinction drawn by the operation of law.

Defendant cites *People v. Olivas* (1976) 17 Cal.3d 236, 251, for the proposition that due to a person's fundamental interest in liberty, strict scrutiny review applies where the state makes sentencing distinctions between persons similarly situated. The California Supreme Court, however, has explained that *Olivas* does not require " 'the courts to subject all criminal classifications to strict scrutiny requiring the showing of a compelling state interest therefor.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 837-838 (*Wilkinson*), quoting *People v. Davis* (1979) 92 Cal.App.3d 250, 258.)

Contrary to defendant's argument, "[a] criminal defendant has no vested interest ' "in a specific term of imprisonment or in the designation a particular crime receives." ' ([*Wilkinson*] at p. 838.) It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard. (*Id.* at p. 840.) Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail. (*People v. Ward* (2005) 36 Cal.4th 186, 217.) Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of

17

the law.  (*Heller v. Doe* (1993) 509 U.S. 312, 319 [] (*Heller*).)"  (*People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).)

Because Proposition 57's different treatment of defendants whose judgments are not final does not involve a fundamental right, and defendant does not contend the measure discriminates against members of a suspect class, it need only survive rational basis review to be constitutional.  Under that standard of review, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'  (*Heller, supra,* 509 U.S. 312, 320.)  In other words, the legislation survives constitutional scrutiny as long as there is ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." '  (*Ibid.*)"  (*Turnage, supra*, 55 Cal.4th at p. 74.)

Such a rational basis exists here.  The California Supreme Court has recognized that the Legislature has a rational basis for refusing to make new laws that reduce criminal sentences fully retroactive—namely, "to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*In re Kapperman* (1974) 11 Cal.3d 542, 546.)  The voters have the same prerogative.  (*People v. Floyd* (2003) 31 Cal.4th 179, 188.)  Consequently, " 'a reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection.' "  (*Id.* at p. 189.)  By the same reasoning, limiting a sentence reduction's retroactivity to cases not then final also does not deny equal protection.  (*Lizarraga, supra*, 56 Cal.App.5th at pp. 208-210.)

" 'A refusal to apply a statute retroactively does not violate the Fourteenth Amendment.'  (*People v. Aranda* (1965) 63 Cal.2d 518, 532.)  '[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.'  (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505 [].)"  (*Baker v. Superior Court* (1984) 35 Cal.3d

663, 668-669.)  Limiting Proposition 57's retroactivity to defendants whose cases were not yet final thus does not violate defendant's equal protection rights.

## DISPOSITION

The judgment is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

KRAUSE, J.