Filed 10/26/22  In re D.W. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re D.W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.W.,<br><br>    Defendant and Appellant. | E078748<br><br>(Super.Ct.No. INJ1500158)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Office of Zulu Ali & Associates and Whitney Ali for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

1

D.W. is alleged to have participated in an attempted robbery when he was two weeks short of his 18th birthday. When the victims tried to flee by driving away, D.W. shot at the vehicle and struck one of the victims in the head, killing her. The juvenile court concluded D.W., who was already 21 years old by the time the People filed a wardship petition, was not amenable to treatment in the juvenile system and granted the People's motion under Welfare and Institutions Code[1] section 707 to transfer him to adult criminal court. D.W. appeals from that order. We affirm.

I.

PROCEDURAL BACKGROUND[2]

On May 7, 2021, the People filed a petition in the juvenile court alleging D.W. (who was 21 years old at the time) was a minor as described in Welfare and Institutions Code section 602 because, on or about October 19, 2017 (when he was less than one month shy of his 18th birthday), D.W. committed the felony offenses of first degree murder (Pen. Code, § 187, subd. (a)) and attempted robbery by force and fear (Pen. Code, §§ 664, 211). The petition also alleged D.W. personally and intentionally discharged a firearm during the commission of the offenses and caused great bodily injury or death (Pen. Code, §§ 12022.53, subd. (d), 1192.7, subd. (c)(8)); he committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang and with

---

[1] All additional undesignated statutory references are to the Welfare and Institutions Code.

[2] The parties do not dispute the basic facts of the alleged offenses as summarized in the probation officer's report. In addition, D.W. does not contend on appeal that the juvenile court's order is not supported by substantial evidence.

the specific intent to promote, further and assist in criminal conduct by members of the gang (Pen. Code, 186.22, subd. (b)); and he committed the murder while attempting to flee after committing the attempted robbery (Pen. Code, § 190.2, subd. (a)(17)(A)).

When it filed the petition, the People filed a notice of motion under section 707 to transfer D.W. from juvenile court to adult criminal court because he was not amendable to treatment and rehabilitation through the juvenile court system.

During the detention hearing, the juvenile court granted a request under section 741 by the probation department for the appointment of a psychologist to conduct a psychological evaluation of D.W. The report was submitted July 13, 2021. D.W. told the psychologist that he began to receive Social Security disability benefits at age five because he had been diagnosed with bipolar disorder and attention deficit hyperactivity disorder (ADHD). D.W. described his mother as "a helpful 'mentor'" and his stepfather as "caring." Neither parent had substance abuse problems, and D.W. denied suffering any childhood trauma in the home such as physical or sexual abuse or exposure to domestic violence. D.W. reported that he attended special education classes from age four and, although he attended high school into the 12th grade, he was short of credits and did not graduate. He reported having difficulty learning and frustration in school, and that he continued to have limited reading comprehension and that he had difficulty in writing. D.W. reported he worked part-time and had never had "regular jobs." Before his arrest, D.W. lived in Arizona with his fiancé and their two sons. He denied having ever received psychiatric treatment, though he believed he had received therapy at some time in the past. D.W. said he was currently receiving behavioral health treatment, and

3

that he was prescribed the anti-psychotic medication Risperdal. He reported having experienced hallucinations and hearing voices from age five to 16, and visual hallucinations up to age 10. D.W. said he did not drink alcohol, use drugs, or abuse prescription medication, and he denied that he had ever received treatment for substance abuse. D.W.'s fiancé told the psychologist that D.W. is caring and a good father, and that "he is not easily influenced by negative peers."

The psychologist concluded D.W. "was well oriented" with "weak concentration and below average short-term and long-term memory." D.W. had limited intelligence, limited vocabulary, and limited expressive and receptive speech abilities. He presented with no auditory or visual hallucinations, and he had no grandiose or paranoid delusional thinking. The psychologist recommended D.W. receive treatment, including intensive psychotherapy, for his bipolar disorder and ADHD to control and manage manic episodes and reduce impulsive behaviors; educational rehabilitation to address his learning deficits; and, if needed, substance abuse treatment.

The probation department filed a suitability report with the juvenile court on September 20, 2021. Deputy Probation Officer Castro had significant contact with D.W. when the minor was 16 and 17 years old and under home supervision for prior burglaries. After evaluating the statutory transfer factors laid out in section 707, the probation officer recommended the juvenile court find that D.W. was not amenable to treatment in the juvenile court system and that the court grant the prosecutor's motion to transfer D.W. to adult criminal court.

With respect to the first factor, the probation officer concluded D.W.'s criminal sophistication during the planning and execution of the attempted robbery weighed in favor of a transfer from juvenile court. Although D.W. was not the "mastermind" behind the attempted robbery, he played an active role in the crime by arming himself with a loaded firearm, using gloves when he loaded the weapon, taking advantage of a position of trust he had with the victims, luring the victims to a park under the ruse of buying Xanax, and cleaning and disposing of the weapon after the shooting. The probation officer noted there was no evidence that D.W.'s mental or emotional health played a role in his participation in the crime. Although D.W. was 17 years old at the time of the offense, he was only two weeks shy of his 18th birthday and his "behavior and maturity were consistent with his age and at times [he] appeared more mature for his age." The probation officer also stated there was no evidence D.W. had been pressured into participating in the robbery and nobody forced him to fire his weapon.

For the second factor, the probation officer concluded D.W. could not be successfully rehabilitated in the juvenile court system before the juvenile court lost jurisdiction. D.W. was 21 years old at the time of the fitness hearing, and the court would lose jurisdiction when he turned 25. Although D.W. could receive mental health and rehabilitative services through the Division of Juvenile Justice, including the Pathways to Success program, the probation officer noted D.W. had pending felony charges for offenses allegedly committed when he was an adult, and a prison sentence for those other offenses would take priority and interfere with his ability to obtain services in the juvenile system. Moreover, considering his current age, his ability to obtain firearms

5

and willingness to carry them, and his apathetic demeanor and minimization of the importance of the alleged offense indicate D.W. would require rehabilitative services well beyond his 25th birthday.

As for the third factor, the probation officer opined that D.W.'s delinquent history weighed in favor of a transfer to adult criminal court. Along with the instant juvenile petition and pending adult charges for possessing a loaded firearm, D.W. had an extensive delinquent history including assault with a deadly weapon or by force likely to cause great bodily injury, various burglaries, and petty theft. Although D.W. had previously successfully completed home supervision, he continued to reoffend. The probation officer opined: "It is evident that even after his involvement in a situation where a person died, the youth was unable to refrain from associating with negative peers and breaking the law." Despite prior attempts at intervention in the juvenile court system and a supportive family, D.W.'s delinquent history was "serious and inexcusable." Therefore, the probation officer opined that "continuation of juvenile services would not appear to be beneficial, but futile."

With respect to the fourth factor, the success of previous attempts to rehabilitate D.W. in the juvenile court system, the probation officer opined it weighed in favor of retaining jurisdiction. Prior referrals, including services in the Wraparound program, had not been successfully completed because D.W.'s attendance waned, and the services were terminated when he re-offended and a subsequent petition was filed. The probation officer opined that the probation department had "not yet exhausted all available services" for D.W., some of which would still be available until he turned 25 years old.

Last, the probation officer concluded the fifth factor, the circumstances and gravity of the current offense, weighed in favor of a transfer. He described the circumstances of the attempted robbery and murder as "extremely serious." D.W. and his confederates lured the victims to a park under the guise of completing a drug deal, when in fact they planned to rob the victims of Xanax at gunpoint. D.W. armed himself with a loaded weapon, although the plan was only to use the firearms to intimidate the victims and not to harm them. When the driver tried to flee, D.W. fired at the vehicle and killed one of the occupants. He later claimed to have feared the driver was going to hit one of his cohorts, though there was no indication the cohort was in any danger of being hit and no one told him to shoot.

In granting the motion, the juvenile court concluded all five factors weighed in favor of a transfer. For criminal sophistication, the court placed "great significance" on the fact D.W. was just two weeks short of his 18th birthday at the time of the alleged offenses. Although his cohorts were adults, there was no evidence they pressured D.W. into participating in the robbery, and he "definitely played a very active role" in the robbery. D.W. knew the plan was to rob the victims at gunpoint of their drugs and weapons, and, although the plan was only to intimidate the victims, he armed himself with a loaded firearm. D.W. wore gloves when he loaded the weapon. After the shooting, D.W. wiped the weapon down with bleach and disposed of it to prevent law enforcement from finding it. The court found D.W.'s ability to procure a weapon and ammunition, and his accuracy in its use also demonstrated criminal sophistication. Finally, the court emphasized the fact D.W. and his cohorts lured the victims to a park

where they could take advantage of their vulnerability, he and his cohorts surrounded the vehicle, and D.W. shot at the vehicle when the victims tried to flee. Although the psychological report indicated D.W. had been diagnosed with bipolar disorder and ADHD, and he had learning disabilities, the court noted there was no evidence the minor's disorders influenced his actions. The probation officer indicated D.W. was mature for his age around the time of the offenses, and there was no indication he acted under pressure from his peers.

For the second factor, the juvenile court noted that, if D.W. remained in the juvenile system, the "serious nature" of his offenses would result in him being committed to the Pathways to Success program and the retention of jurisdiction until he turned 25 years old. Because D.W. was already 22 years old at the time of the ruling, he would have at most two and a half years in the program. Moreover, if convicted of pending adult criminal charges, he would have to serve that sentence before returning to the juvenile system, "further limit[ing] the potential time for juvenile rehabilitative efforts." And, even if D.W. were not convicted of the pending adult charges, the court concluded his actions during and immediately after the attempted robbery, and his evasive and dishonest statements to the probation officer, indicated he would not likely take advantage of rehabilitative services during the remaining time the court would have jurisdiction.

For the third factor, the juvenile court noted D.W. had six petitions filed within a span of three years, alleging felony and misdemeanor conduct. Despite reporting to the probation officer that he had a supportive home, D.W.'s criminal activities escalated until

8

the current offense resulted in the loss of life. The court did not consider the pending adult charges.

As for the fourth factor, the juvenile court concluded D.W. had previously been ordered to participate in the Wraparound program, an intensive out-of-custody program that provided multiple services to him and his family. Although he did well at first, his participation lessened over time, and he reoffended. He was then placed out of the home and provided with additional services and therapy, yet he still associated with negative peers and engaged in serious illegal conduct. The court concluded that, while "not every possible attempt to rehabilitate [D.W.] has been made, . . . the prior attempts have been unsuccessful and it is unlikely that future juvenile attempts would be successful."

Last, with respect to the gravity of the offenses, the juvenile court noted the "current violation is the most serious and grave allegation that exists in our society" because D.W.'s actions resulted in the loss of life. "The circumstances are extremely serious as the evidence suggests that [D.W.] was an active participant in the robbery and chose to bring a loaded firearm to fulfill his role of enforcer in case there were any problems during the crime. [D.W.] and his accomplices lured the victims to their location that resulted in them being in an extremely vulnerable position. [D.W.] fired his gun numerous times at a car that was trying to get away from a dangerous situation. This crime shows extreme callousness and a certain dangerousness and disregard to human life that cannot be ignored."

The juvenile court emphasized it based its ruling on the totality of the circumstances, it did not base its ruling solely on the seriousness of the current offense,

9

and it considered the legislature's preference for keeping more juvenile offenders in the juvenile court system.

D.W. timely appealed.[3]

## II.

## DISCUSSION

### A. *Applicable Law and Standard of Review.*

If a prosecutor wishes to pursue felony charges in adult criminal court against a defendant who was at least 16 years old but not yet 18 years old at the time of the offense or offenses, the prosecutor must file a petition in the juvenile court alleging the minor is a ward of the court as described in section 602 then move the juvenile court to transfer the proceeding to adult criminal court. (§ 707, subd. (a)(1).) Upon receipt of the transfer motion, the juvenile court must order the probation department to prepare a report "on the behavioral patterns and social history of the minor." (*Ibid.*; see Cal. Rules of Court, rule 5.768(a), (b).)

The prosecutor bears the burden of proving by a preponderance of the evidence that the minor is not amendable to treatment in the juvenile system. (*J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 715; Cal. Rules of Court, rule 5.770(a); see Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."].) The point of the hearing on a transfer motion is

---

[3] Effective January 1, 2022, an order transferring a minor from juvenile court to adult criminal court is appealable. (§ 801, subd. (a), as added by Stats. 2021, ch. 195, § 1; see *People v. Pineda* (2022) 78 Cal.App.5th 491, 497-498 [holding § 801 applies prospectively to transfer orders made on or after Jan. 1, 2022].)

not to determine whether the minor committed the alleged offense or offenses, but solely to decide whether the minor will be a suitable candidate for treatment as a juvenile ward if the allegations are later proven true. (*People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 716; *Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 186.)

In deciding whether to transfer the minor to adult criminal court, the juvenile court must consider five criteria: (1) "The degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)); (2) "Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction" (§ 707, subd. (a)(3)(B)(i)); (3) "The minor's previous delinquent history" (§ 707, subd. (a)(3)(C)(i)); (4) "Success of previous attempts by the juvenile court to rehabilitate the minor" (§ 707, subd. (a)(3)(D)(i)); and (5) "The circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (§ 707, subd. (a)(3)(E)(i)).

The criteria set forth in section 707, subdivision (a)(3), "are . . . merely factors for the juvenile court to consider in exercising 'broad discretion' as to whether to retain jurisdiction." (*People v. Padilla* (2022) 13 Cal.5th 152, 167.) The relative weight to be given to each of the criteria is within the sound discretion of the juvenile court. (*D.W. v. Superior Court* (2019) 43 Cal.App.5th 109, 116; *People v. Garcia* (2018) 30 Cal.App.5th 316, 325.) "Nothing in section 707 indicates that the juvenile court [is] required to give equal weight to each of the five criteria or that it would necessarily be an abuse of discretion to find that one criterion outweigh[s] the other criteria." (*C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1035.)

11

If the juvenile court orders the minor to be transferred to adult criminal court, "the court shall recite the basis for its decision in an order entered upon the minutes." (§ 707, subd. (a)(3); see Cal. Rules of Court, rule 5.770(c).) The statement of reasons for finding that a minor is unfit for treatment as a juvenile "must set forth the basis for the order with sufficient specificity to permit meaningful review." (*Kent v. United States* (1966) 383 U.S. 541, 561; see *In re Sturm* (1974) 11 Cal.3d 258, 269.) "In most cases, this requirement will be met where the juvenile court performs a factual analysis of the relevant factors as to each criterion . . . and then specifies the criteria that weighed in favor of transfer." (*C.S. v. Superior Court*, *supra*, 29 Cal.App.5th at p. 1029.)

An order transferring a minor to adult criminal court is reviewed for abuse of discretion. (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 680.) Generally, a juvenile court abuses its discretion if it acts in an arbitrary or capricious manner, or if the court's order otherwise exceeds the bounds of reason. (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118.) "The court's factual findings [in support of a transfer order] are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. [Citation.] A decision based on insufficient evidence or the court's '"erroneous understanding of applicable law"' is subject to reversal." (*Kevin P. v. Superior Court*, *supra*, 57 Cal.App.5th at p. 187.)

The substantial evidence standard of review is deferential, and the reviewing court must view the record in the light most favorable to the juvenile court's ruling. (*In re R.V.* (2015) 61 Cal.4th 181, 200.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and '"substantial"

proof of the essentials which the law requires in a particular case.'" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006; see *People v. Johnson* (1980) 26 Cal.3d 557, 576.) "In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] "The determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.'" (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

> B.     *The Juvenile Court Did Not Abuse Its Discretion.*

D.W. argues the juvenile court did not properly consider the transfer factors set forth in section 707. We disagree.

> 1.     *Criminal sophistication.*

When determining the minor's level of criminal sophistication displayed during the commission of the offense or offenses alleged in the petition, "the juvenile court may give weight to any relevant factor, including, but not limited to, the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense, the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior, the effect of familial, adult, or peer pressure on the minor's actions, and the effect of the minor's family and community environment and childhood trauma on the minor's criminal sophistication." (§ 707, subd. (a)(3)(A)(ii).)

The juvenile court must "consider the whole picture, that is, all the evidence that might bear on the minor's criminal sophistication, including any criminal sophistication manifested in the present crime." (*People v. Superior Court* (*Jones*), *supra*, 18 Cal.4th at pp. 683-684.) Evidence of criminal sophistication includes detailed planning and execution of the alleged offense; the fact the minor obtained a firearm, gloves, and a mask beforehand; the selection of a specific victim because the minor believed he or she would not be apprehended; and disposal of evidence that might link the minor to the offense. (*Id*. at p. 684.)

As noted, *ante*, in finding D.W. displayed criminal sophistication during the attempted robbery, the juvenile court placed "great significance" on the fact D.W. was just two weeks short of his 18th birthday at the time, and there was no evidence he was pressured into participating in the robbery by his adult cohorts. Moreover, the record supports the court's conclusion that, although he was not the mastermind who planned the robbery, D.W. "played a very active role" in the crime. As the court indicated, D.W. knew the plan was to rob the victims of their drugs and weapons and, although the plan was only to intimidate the victims, he armed himself with a loaded firearm. He also demonstrated criminal sophistication by wearing gloves when he loaded the weapon, wiping the weapon down with bleach after the shooting, and disposing of it. We also agree with the juvenile court that the plan for the crime, which D.W. helped to execute, demonstrated criminal sophistication. He and his cohorts lured the victims to a park,

14

where they could take advantage of their vulnerability, he and his cohorts surrounded the vehicle, and D.W. shot at the vehicle when the victims tried to flee.[4]

### 2. *Successful treatment before the expiration of jurisdiction.*

When deciding whether the minor can be successfully treated before the expiration of juvenile court jurisdiction—in this case, when D.W. turns 25 years old (§ 1769, subd. (b))—"the juvenile court may give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature." (§ 707, subd. (a)(3)(B)(ii).)

The juvenile court concluded that, because of the "serious nature" of D.W.'s offenses, if he were to remain in the juvenile court system, he would be committed to the Pathways to Success program and jurisdiction would be retained until he turned 25 years old. However, because D.W. was already 22 years old at the time of the ruling, at most he would have had two and a half years in the program. In addition, if he were convicted of pending adult criminal charges, his sentence for those charges would have to be served before he could return to the juvenile system, "further limit[ing] the potential time for juvenile rehabilitative efforts." Moreover, the court indicated that, even if D.W. were not convicted of the pending adult charges, it was very unlikely that he could be successfully rehabilitated in two and a half years. Based on the record, including the probation officer's report and testimony, the juvenile court did not abuse its discretion by

---

**4** Although the juvenile court did not do so, we note that the selection of the victims—drug dealers who are not likely to report a robbery—also demonstrates a level of criminal sophistication. (*People v. Superior Court* (*Jones*), *supra*, 18 Cal.4th at p. 684; cf. *In re Harper* (2022) 76 Cal.App.5th 450, 462, fn. 6 ["[A] defendant might steal from a drug dealer, an undocumented immigrant, or even a family member and reasonably assume the victim will be reluctant to report the crime to the police."].)

15

concluding successful rehabilitation would require services beyond the mandatory date of D.W.'s discharge from the juvenile system.

### 3. Delinquent history.

When evaluating the minor's delinquent history, "the juvenile court may give weight to any relevant factor, including, but not limited to, the seriousness of the minor's previous delinquent history and the effect of the minor's family and community environment and childhood trauma on the minor's previous delinquent behavior." (§ 707, subd. (a)(3)(C)(ii).)

As the juvenile court indicated, D.W. had six petitions filed and adjudicated in the juvenile court within a span of three years alleging felony and misdemeanor conduct. In his brief, D.W. argues his "criminal history is not significant." Although the juvenile court declined to consider D.W.'s pending adult criminal charges for possessing a firearm, the court was permitted to consider conduct that occurred after the minor's current offense as well as conduct that did not result in the filing of a wardship petition. (*D.C. v. Superior Court* (2021) 71 Cal.App.5th 441, 451-456.) As the court concluded, despite his receipt of services for adjudicated conduct, his criminal activities escalated to the point where his actions resulted in the loss of life.

### 4. Success of prior treatment.

When evaluating the success (or lack thereof) of previous attempts to rehabilitate the minor within the juvenile court system, "the juvenile court may give weight to any relevant factor, including, but not limited to, the adequacy of the services previously provided to address the minor's needs." (§ 707, subd. (a)(3)(D)(ii).)

16

D.W. had previously participated in the Wraparound program. He did well at first, but his participation lessened over time, and he reoffended. He was then removed from his home and provided with additional services and therapy, yet he still associated with negative peers and engaged in serious illegal conduct. Like the probation officer, the juvenile court concluded "not every possible attempt to rehabilitate [D.W.] has been made." But, contrary to the implicit suggestion in D.W.'s brief, it was not required to agree with the probation officer that the factor ultimately weighed in favor of retention of jurisdiction. Both the court and the probation officer concluded it was unlikely that D.W. could be successfully rehabilitated within the juvenile system in the remaining time. We find no abuse of discretion.

### 5. *Circumstances and gravity of the current offense.*

Finally, when considering the circumstances and gravity of the offenses or offenses alleged in the petition, "the juvenile court may give weight to any relevant factor, including, but not limited to, the actual behavior of the person, the mental state of the person, the person's degree of involvement in the crime, the level of harm actually caused by the person, and the person's mental and emotional development." (§ 707, subd. (a)(3)(E)(ii).) "The gravity criterion . . . is 'based on the premise that the minor did, in fact, commit the offense.'" (*Kevin P. v. Superior Court*, *supra*, 57 Cal.App.5th at p. 189, quoting *People v. Superior Court* (*Jones*), *supra*, 18 Cal.4th at p. 682.) When evaluating this criterion, the juvenile court may consider evidence that, "'while not justifying or excusing the crime, tends to lessen its magnitude . . . .'" (*Kevin P.*, at p. 189, quoting *Jones*, at p. 685.)

To minimize the circumstances and gravity of his offenses, D.W. argues he "was only there as backup to an already planned drug transaction and robbery," and he fired his weapon because he believed the driver of the weapon was going to hit and kill his brother. We are not persuaded. As the juvenile court indicated, the "current violation is the most serious and grave allegation that exists in our society" because it resulted in the loss of life. Likewise, we agree with the juvenile court that the circumstances of the offense were grave indeed. D.W. was tasked with providing backup to intimidate the victims but, unbeknownst to his cohorts, he armed himself with a loaded handgun. He helped lure the victims to the park, where they were more vulnerable. And, when the victims tried to flee, he fired at the vehicle and killed one of the victims. Although the court could have considered D.W.'s explanation for why he fired his weapon, based on the totality of the circumstances of the offenses, we cannot say the court abused its discretion when it ruled the circumstances demonstrated "extreme callousness, . . . dangerousness and disregard to human life" such that the gravity and circumstances and offenses weighed in favor of transfer D.W. to adult criminal court.

18

## III.

## DISPOSITION

The order transferring D.W. from juvenile court to adult criminal court is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.